STATE OF NEBRASKA, APPELLEE, v. FARMERS STATE BANK ET
AL., APPELLEES: OAKLAND STATE BANK, INTERVENER,
APPELLANT.

FILED FEBRUARY 15, 1919.   No. 20821.

1. **Parties:** INTERVENTION.  Under the method of intervention pro-
vided for by section 7609, Rev. St. 1913, the petition must be filed
before the trial.  Such intervention is a matter of right, and
does not require leave of court.

2. ———: ———.  This method, however, is not exclusive, and in a
proper case, where the person desiring to intervene files a petition
before the entry of final judgment in the district court of the
county where the action is pending, which petition sets forth good
and sufficient reasons for his failure to file before the trial, and
shows no laches on his part, and a *prima facie* right to intervene,
and his claim is of such a nature that relief cannot be obtained
unless it be granted him upon intervention, leave to intervene
should be granted by a court of equity.

3. ———: ———: TIME.  The petition in this case examined, and
*held,* in substance and effect, to be a petition for leave to inter-
vene, and not a petition counting upon the statute.  Such a peti-
tion may be filed at any time during the pendency of the action.

4. ———: ———: RIGHT: PUBLIC FUND.  When public officers are
engaged in litigation to protect public rights, and their pleadings
and procedure maintain the public interest, no private person is
entitled to intervene; but, when the contrary appears, any person
interested in the preservation and proper administration of a
public fund which is under the control of a court of equity has
a right to intervene.

5. **Banks and Banking:** DEPOSITORS' GUARANTY FUND: INTERVENTION.
The state depositors' guaranty fund is created by contributions
from all banks of deposit organized under state authority.  Each
of such banks has an interest in the proper administration and
distribution of the fund.  If it appears that, by reason of an
error or mistake of law on the part of a public officer, the
depositors' guaranty fund is about to be depleted, any such bank
may intervene to protect itself and all other banks contributing
to the fund.

6. ———: ———: PAYMENT TO DEPOSITORS: SUBROGATION.  Under sec-
tion 332, Rev. St. 1913, after money has been drawn from the
depositors' guaranty fund and paid to depositors, the state bank-
ing board, for the use and benefit of such fund, is subrogated

State v. Farmers State Bank.

to the rights of depositors to participate in the assets. The board therefore becomes a general creditor of the insolvent bank, and is entitled to prorate with all other nonpreferred creditors in the net assets. It is error to prefer a general creditor over the right of the guaranty fund to reimbursement.

APPEAL from the district court for Burt county: ALEXANDER C. TROUP, JUDGE. *Reversed, with directions.*

*J. A. Singhaus,* for appellant.

*Willis E. Reed, former Attorney General,* and *Clarence A. Davis, Attorney General, John L. Webster* and *Arthur F. Mullen, contra.*

In June, 1916, the Farmers State Bank of Decatur was declared insolvent, and, upon the application of the state by the attorney general, was placed in the hands of a receiver.

In 1915, Frank Iams deposited certain sums of money with this bank, and received certificates of deposit aggregating $12,000. A judgment was rendered for said sum with interest, but the transaction was also held to be a loan, and not entitled to be paid from the bank guaranty fund. *Iams v. Farmers State Bank,* 101 Neb. 778. A petition in intervention was afterwards filed by Iams in the receivership proceedings, asking that the money due him be paid from the assets of the bank in the receiver's hands. The state of Nebraska, by the attorney general, answered, in substance, that the total amount which can be realized from the assets of the bank is insufficient to reimburse the guaranty fund for money paid to depositors, and that the right of such fund to reimbursement is prior to the claim of Iams.

On June 17, 1918, the attorney for Iams and the attorney general, in behalf of the state, entered into an agreement with respect to the case, and a form of judgment in favor of Iams was prepared and presented by them to Judge Troup of the district court for Douglas county, which is in the same judicial dis-

trict as Burt county. This was signed by him at Omaha and retained by him, with the intention of taking it to Burt county, where he intended to hold a session of court a few days thereafter.

On June 27, 1918, the Oakland State Bank, in behalf of itself and all other banks contributing to the state guaranty fund, filed an answer and petition in intervention, in substance alleging that the bank guaranty fund is a trust fund created for the purpose of paying depositors of insolvent state banks, and cannot be diverted or used for any other purpose; that there is still due the guaranty fund from the receiver over $35,000, which had been paid to depositors; that the petitioner knew the state of Nebraska was resisting the claim of Iams to priority, but was not aware that it had consented to the payment of the claim in full, until June 24, 1918; that no judgment had been rendered in Burt county, and praying that the net assets in the receiver's hands be paid to the state banking board for the reimbursment of the bank guaranty fund.

On July 6 a motion was filed by Iams to strike the intervening petition from the files. The motion sets forth that a judgment in favor of Iams had been agreed upon between the state and Iams in good faith; the signing of the judgment by Judge Troup on June 17, 1918; that the petition of intervention of the Oakland State Bank was neither drafted nor filed until after that bank had been informed that the judgment had been signed on the 17th day of June; that the petition of intervention came too late; that the intervener was without right or authority to file it, for the reason that the questions of fact and law presented by it attach to the state in its sovereign capacity, are subject to the control of the attorney general, and not subject to be interfered with by the bank in its individual capacity; and that it does not appear that the bank has any direct interest in the subject-matter as to entitle it to intervene.

On July 25, 1918, an amendment was filed to the petition of intervention alleging coercion of the attorney general, and that the agreement was made without the knowledge or consent of the state banking board. On July 30, 1918, the motion to strike the petition and supplemental petition of intervention was submitted to Judge Redick, sitting in the district court for Burt county, and sustained, for the reason that the same were not filed in time, to which ruling intervener excepted. The court at this time also entered the judgment in favor of Iams, which had formerly been signed by Judge Troup, and ordered the same entered on the judgment docket as of the date of June 17.

The Oakland State Bank has appealed, and the matter is now before us for consideration.

LETTON, J.

Although many matters not relevant to the real issues in the case, nor within the record, were presented at the oral argument, and are contained in the briefs, the determining questions presented by the record are few.

In the first place the contention of the appellee that a statutory petition in intervention must be filed before trial must be conceded. But there are two kinds of intervention—that provided by section 7609, Rev. St. 1913, which, we have decided in common with the courts of other states having like provisions, is a matter of right, and which requires no leave to be granted by the court. In such a case the intervener can only file as a matter of right before the trial, and the authorities cited by the appellee on this point are applicable.

The other kind of intervention is that which prevailed in this state before the enactment of the statute mentioned, and which, while not an ancient procedure in courts of equity (note at page 281, 123 Am. St. Rep.), has been adopted by many courts as essentially equitable in its nature, and which may be allowed by a court

of equity in its discretion in a proper case. Van Zile, Equity Pleading and Practice, sec. 294 *et seq.* The petition for this relief may be filed at any time during the pendency of the action. It is not governed by the statute, but falls under the general principles of practice in courts of chancery.

In a petition in intervention, under the statute, it is unnecessary to set forth any reasons why it is not filed sooner. The allegations in the petition excusing the delay virtually admitted that the petition came too late as a statutory intervention, and were for the purpose of showing why a court of equity should permit the petition to be filed under its general equity powers.

Even though the petition presented does not in literal terms request that leave to intervene be granted, it prays "that this petition of intervention be allowed." It appears to us that the object of the pleading was to present matter for the consideration of a chancellor, that the petition should have been treated as being a request for leave to intervene, and that the omission by the pleader of a formal request ought not to defeat his right to have the petition considered.

We know of no rule of procedure in a court of equity which denies an interested party, who has been compelled by circumstances beyond his control to be placed in a position in which it was impossible for him to assert his rights at an earlier time, the right to call the attention of the court to the circumstances, and the right to intervene, if the facts set forth in his petition warrant his being made a party, and the more especially if made at the same term and before the entering of judgment in the case. *United States Trust Co. v. Chicago T. T. R. Co.,* 110 C. C. A. 270.

Does the petition set forth a sufficient excuse for not being filed before the trial? Where public officers are engaged in litigation to protect public rights, and their pleadings maintain the public interest, no private

person is entitled to intervene. *Buffalo County v. Kearney County*, 83 Neb. 550.

The bank had no right to appear as long as the state was denying the right of Iams to recover. Court was not in session in Burt county, and no proceedings were had in that county at the time that the form of judgment was signed by Judge Troup in Douglas county. The statute allows a judgment to be entered by a judge of the district in an equity case in any county in his district upon notice and by agreement of parties. The agreement was made, not in open court where the intervener might have had information of it and an opportunity to object or protest, but in another county than the one where the case was pending.

It is alleged that, as soon as the intervener discovered the facts, it filed its petition. At that time the judgment was incomplete in that it could not be enforced or be used as a basis for appeal until duly made a matter of record in the district court for Burt county. If the allegations are admitted or sustained by proof, they afford sufficient excuse for the delay, and good ground for allowing the intervention.

We conclude, therefore, that, if the petition upon its face sets forth an interest in the subject-matter adverse to Iams and a *prima facie* defense to his claim, the intervener is entitled to be heard.

The right of the Oakland State Bank to intervene at all in this matter is challenged on the ground that it has no interest in the controversy. It is true that its interest is not direct, but neither the statute nor the rules of equity procedure make a direct interest a condition to the right to intervene. Has the bank shown *prima facie* an interest in the subject-matter? It prays for itself and for all other banks contributing to the state depositors' guaranty fund. This fund is created by assessments made upon all state banks in proportion to the amount of their average deposits. Any depletion of the funds must be made up by these banks. The

banks occupy to the fund a similar position that tax-payers bear to the public funds. While the interest of a taxpayer in such funds may be small, he has the right to apply to a court of equity to enjoin any wrongful diversion of the public moneys. Under the statute, when the guaranty fund reaches 1½ per cent. of the average daily deposits of the banks, assessments cease until it falls below 1 per cent. of such deposits, so that the depletion of the fund requires a new assessment, just as the diversion of public funds requires additional taxation to restore the money thus diverted.

Section 332, Rev. St. 1913, provides, in substance, that, if the money in the hands of the receiver of an insolvent bank is insufficient to pay the claims of depositors, the court in which the receivership is pending, or the judge thereof, shall determine the amount necessary to supply the deficiency, and that the state banking board, when this amount is certified, shall draw the amount from the guaranty fund and transmit the same to the receiver.

By section 333, Rev. St. 1913, the state banking board, for the use and benefit of the guaranty fund, is subrogated to the rights of the creditors paid from the fund to participate in the assets. After the payment of the depositors, the state banking board, for the use of the guaranty fund, became a general creditor of the insolvent bank to the extent of the contribution from that fund. The claim of Iams, the claim of the guaranty fund, and the claim of all other creditors not preferred by the statute are entitled to share *pro rata* in the net assets after paying the costs and expenses of the receivership. The effect of the judgment agreed upon and rendered in this case is to make the claim of Iams a preferred claim, and give it precedence in payment over that of the guaranty fund and other creditors. This is in direct contravention of the statute. Where the direct provisions of the statute with reference to the disposition of a trust fund are

State v. Farmers State Bank.

ignored to the injury of a contributor to the fund, it occupies a like position to that of a stockholder in a corporation whose directors are diverting the property of the corporation to its damage. In such case he has a property right which a court of equity will protect if the proper officers of the corporation refuse or neglect to protect his interest. An analogous situation is presented here if the proof bears out the charges made, and the contributors to the fund are entitled to apply to a court of equity to protect their interests if they are not taken care of by the officers of the state.

It is a general principle that, where a person has an interest in a fund which is in control of a court of equity, but which is in danger of being dissipated or diverted from its purpose, and he desires to secure its proper administration and distribution, he is entitled to intervene for that purpose.

To sum up, if this had been an ordinary petition in intervention under the statute, its filing would, as the district court held, have come too late, but since it set forth sufficient reasons for the delay in filing, and showed *prima facie* sufficient interest in the subject-matter, it was in substance and effect an application to the equity powers of the court for leave to intervene, and should have been so considered, and the motion to strike overruled. While there may be scandalous and redundant matter in the pleading subject to be stricken, if attacked, we think it was prejudicial error to strike it as a whole.

For the foregoing reasons, the judgment of the district court is reversed, and the cause remanded, with directions to set aside the judgment in favor of Iams, to allow the petition in intervention to be filed, and for such further proceedings as may be necessary.

REVERSED.

SEDGWICK and CORNISH, JJ., not sitting.