JAMES F. KIRCHNER, APPELLANT AND CROSS-APPELLEE, V. CAROL R. GAST, APPELLEE AND CROSS-APPELLEE, METROPOLITAN UTILITIES DISTRICT OF OMAHA, INTERVENER-APPELLEE AND CROSS-APPELLANT.

100 N. W. 2d 65

Filed December 11, 1959. No. 34579.

*Charles E. Kirchner,* for appellant.

*Wear, Boland, Mullin & Walsh* and *A. Lee Blooming-dale,* for appellee.

*George C. Pardee, G. H. Seig,* and *Harry A. Foulks, Jr.,* for intervener-appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an intersection automobile damage case with this distinction: The two cars involved did not make contact. Defendant was driving south across an intersection. Plaintiff was driving east. Plaintiff's car passed around the rear of defendant's car. It then went at an angle across the intersection over a curb near the northeast corner and came in contact with a tree and a water hydrant. Plaintiff suffered personal injuries. The car was damaged. The water hydrant was damaged.

The car plaintiff was driving belonged to plaintiff's father. Plaintiff, alleging negligence of the defendant, sued in one cause of action for damages to his person, and in a second cause sued as assignee for damages to the car. Issues were made as between plaintiff and defendant.

The Metropolitan Utilities District, hereinafter called the District, intervened, alleging negligence of both the plaintiff and defendant and sought a recovery of the damages to its water hydrant. Issues were made as between plaintiff, defendant, and the District. The trial court on its own motion and on an oral motion of plaintiff gave the District leave to docket the pleadings as a

separate proceeding and dismissed the petition in intervention.

The action was then tried resulting in a directed verdict for defendant. Plaintiff appeals alleging error in the direction of a verdict against him. The District, as appellee, assigns error in the order of dismissal of its petition in intervention.

We affirm the judgment of the trial court.

Chronologically the issues here involved developed in the following manner:

The accident occurred on February 12, 1957. Plaintiff filed his petition on June 18, 1957. The defendant filed his answer on July 3, 1957. The District filed its petition in intervention on October 16, 1957. On November 12, 1957, the defendant answered the petition in intervention, joining issues and praying that the petition in intervention be dismissed.

On December 2, 1957, plaintiff filed his answer to the petition in intervention in which he answered generally and denied that the District had an interest in the matter entitling it to intervene. On December 12, 1957, the District filed its reply to both answers.

On December 5, 1958, the trial court, upon its own motion, and upon motion made by plaintiff, took up the matter in the plaintiff's answer to the petition in intervention. The court held that the District was not authorized to intervene in the action. The court granted the District leave to redocket the pleadings pertinent to the intervention as a separate action and if not done within 10 days the petition in intervention "will be dismissed without prejudice." The cause came on for trial December 8, 1958. On that day the District presented a motion to be allowed to participate in the trial. The motion was denied.

On December 10, 1958, the trial court sustained defendant's motion for a directed verdict.

On December 11, 1958, the District moved for judgment on the pleadings and the evidence.

On December 15, 1958, the District moved to vacate the dismissal order of its petition which it entitled a "Motion for New Trial." On the same day the court entered an order denying the District's motion for judgment.

On December 31, 1958, the court denied the motion of December 15, 1958.

In the meantime plaintiff had on December 11, 1958, filed a motion for a new trial which was overruled on December 15, 1958. On December 24, 1958, plaintiff gave notice of intent to appeal. The transcript was filed here on January 16, 1959.

As of July 20, 1959, the clerk of the district court certified that the District had not caused the pleadings pertinent to its intervention to be redocketed.

The District filed here its brief on cross-appeal. It presents its right to intervene under the provisions of section 25-328, R. R. S. 1943.

Defendant here challenges the District's right to cross-appeal under the provisions of sections 25-1912 and 25-1913, R. R. S. 1943. Defendant contends that the order of dismissal of the petition of intervention, if the cause was not redocketed, was a final order and this court could only get jurisdiction of that question by a separate notice of appeal; and that no appeal proceedings having been had from the order the question was finally determined.

The question is: Was the District a party to the action under the provisions of sections 25-1912 and 25-1913, R. R. S. 1943, and our rule 1 b, so as to give it the right of cross-appeal provided by our rule 1 d? The District intervened under the provisions of section 25-328, R. R. S. 1943.

Section 25-328, R. R. S. 1943, provides: "Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the State of Nebraska, may become

a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the petition, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the action, and before the trial commences."

A petition in intervention under the provisions of section 25-328, R. R. S. 1943, to be filed as a matter of right must be filed before the trial. State v. Farmers State Bank, 103 Neb. 194, 170 N. W. 901.

The District filed its petition in intervention within time. It was, however, subject to the condition that its petition demonstrate an interest in the matter being litigated within the provisions of the statute. Clearly the trial court held that the District had not met the condition above stated. The District contended that it had. It persisted in that contention as recited above. It kept itself in the action as a party until the question of the sufficiency of its petition, to demonstrate an interest in the matter being litigated between the plaintiff and defendant, was finally determined. That question it brings here. Under these circumstances the District becomes an appellee under the provisions of section 25-1913, R. R. S. 1943, with the right to cross-appeal here under the provisions of rule 1 d.

We held in State ex rel. Bugbee v. Holmes, 60 Neb. 39, 82 N. W. 109: "An intervener against whom a judgment has been rendered must be accorded the rights which, under like circumstances, belong to any other unsuccessful suitor."

Section 25-329, R. R. S. 1943, provides: "The court shall determine upon the intervention at the same time that the action is decided, and if the claim of the intervener is not sustained he shall pay all costs of the intervention."

The District contends that the trial court's decision was premature and that the trial court could not decide

the question of compliance with the condition applicable to section 25-328, R. R. S. 1943, until after trial and at the same time decision was had in the action between plaintiff and defendant.

The District relies on Montgomery v. Dresher, 97 Neb. 112, 149 N. W. 314. The syllabus point when read alone appears to sustain the position of the District. When read in connection with the opinion, the support disappears. It does not appear that the sufficiency of the intervener's petition to demonstrate the requisite interest in the litigation was determined. It does appear from the opinion that the trial court's findings showed an interest in the litigation which the intervener was entitled to have adjudicated "in the final determination of the action."

Clearly the District had not yet reached the point where it had been determined that it had an interest in the matter in litigation.

In Drainage Dist. No. 1 v. Kirkpatrick-Pettis Co., 140 Neb. 530, 300 N. W. 582, we reviewed many rules regarding intervention and said this: "It may be conceded that the provisions of our Civil Code do not contemplate intervention by leave of court first obtained. It is ordinarily a matter of right, and not of permission. Nevertheless, the question whether pleadings or pleadings and proof establish that the party seeking to intervene has an actual interest in the subject of the controversy entitling him to participate therein to the extent of the interest possessed by him is a necessary preliminary question for the trial court's decision and is determinable when the action is finally decided." We relied on State ex rel. Bugbee v. Holmes, *supra.*

It appears in the above case that there had been no challenge to the sufficiency of the intervener's petition to show the requisite interest in the matter in litigation. The trial court found against the intervener and dismissed the petition in intervention after hearing upon the issues.

That is not this case. The language used in the quote relates to "pleadings or pleadings and proof," and refers to "a necessary preliminary question" for the trial court's determinaton which relates itself to the pleadings, and the clause "determinable when the action is finally decided" relates itself to the question of proof.

In State ex rel. Bugbee v. Holmes, *supra,* we referred to the statute and held: "This section does not contemplate intervention by leave of court. It gives, absolutely, to any person who can show by proper averments that he has an interest in the subject of the controversy, the right to become a party and to obtain an adjudication of his claims. The court has no authority to exclude from the case an intervener whose pleading discloses a direct interest in the matter of litigation; it must give judgment on the merits; it must decide in his favor or against him; and if against him, it must accord him the rights which belong to any other unsuccessful suitor."

Impliedly from that decision a court has authority to exclude from the case an intervener whose pleadings do not disclose a direct interest in the matter in litigation.

Noble v. City of Lincoln, 158 Neb. 457, 63 N. W. 2d 475, in effect decides this matter adverse to the contention of the District. There was in that case a petition in intervention. Its sufficiency was attacked by general demurrer. The trial court overruled the demurrer. We held that the demurrer should have been sustained because the petition in intervention did not allege facts showing a sufficient interest in the matter in litigation.

Obviously the sustaining of a demurrer would prevent the intervener from participating in the trial. Accordingly we hold that section 25-329, R. R. S. 1943, is applicable where an intervener has met the requirements of section 25-328, R. R. S. 1943, and has pleaded the required interest in the matter in litigation. It requires the issues presented by such an intervention to be decided when the issues presented by the plaintiff

and defendant are determined. It does not apply to a decision of the preliminary question of the sufficiency of the petition in intervention.

We go, then, to the question: Has the District by its petition shown a right to maintain its intervention in this action?

We have held: "The interest in a matter in litigation which will authorize a person to so intervene must be such a direct and immediate interest that the person or persons seeking to intervene will either lose or gain by the direct operation and legal effect of the judgment which may be rendered in the action. * * * Such an interest must be one arising from a claim to the subject matter of the action or some part thereof or a lien upon the money or property or some part thereof, as distinguished from an indirect, remote, or conjectural interest in the result of the suit which is not enough to permit intervention." Gilbert v. First Nat. Bank, 154 Neb. 404, 48 N. W. 2d 401. See, also, Noble v. City of Lincoln, *supra.*

" 'No rule is better settled or more essential to the rights of parties litigant than that every person is entitled to access to courts of justice without interference from persons who have no interest in the matters in litigation.' " Drainage Dist. No. 1 v. Kirkpatrick-Pettis Co., *supra.*

It does not appear that we have undertaken expressly to define the meaning of the phrase "matter in litigation" found in section 25-328, R. R. S. 1943. The statute gives us an indication of its meaning when it refers to "joining the plaintiff in claiming what is sought by the petition, or by uniting with the defendants in resisting the claim of the plaintiff." In the above there is a limitation of the matter in litigation to the claims of one or the other of the parties. The statute further authorizes intervention "by demanding anything adversely to both the plaintiff and defendant." This of course, is restricted to the scope of "matter in liti-

gation" and "claims" used earlier in the section. In fact we have so held: To authorize a party to intervene the interest must be one arising from a claim to the subject matter of the action or some part thereof, or a lien upon the property or some part thereof. Kansas & C. P. Ry. Co. v. Fitzgerald, 33 Neb. 137, 49 N. W. 1100. See, also, Latham v. Chicago, B. & Q. R. R. Co., 100 Neb. 173, 158 N. W. 923; Cornhusker Electric Co. v. City of Fairbury, 131 Neb. 888, 270 N. W. 482.

The matter in litigation as used in section 25-328, R. R. S. 1943, is the subject matter of the action, "the thing in controversy." Holmes v. Mason, 80 Neb. 448, 114 N. W. 606. What, then, are the claims at issue between plaintiff and defendant in this action? It is the "claim" of plaintiff that he is entitled to recover from the defendant damages for personal injuries and for property damage based on the alleged negligence of the defendant. Defendant makes no affirmative recovery claim but seeks a dismissal of plaintiff's petition. Briefly stated, the above sets out the matters in litigation between the parties.

The District makes no claim to any part of the damages claimed by the plaintiff. It does not resist the claim of the plaintiff against the defendant. Obviously the District has no interest in asserting or defending the claims of the plaintiff against the defendant. The District claims a different cause of action against both the plaintiff and defendant. It seeks to recover damages to its hydrant. Such a "claim" is not in anywise involved between the plaintiff and defendant.

Under the rules above stated we conclude that the trial court did not err in the rulings of which the District complains. As to the District's cross-appeal, the judgment of the trial court is affirmed.

We find nothing in Lackaff v. Bogue, 158 Neb. 174, 62 N. W. 2d 889, nor in Hoffman v. Geiger, 134 Neb. 643, 279 N. W. 350, which is in conflict with this conclusion.

This brings us to the question presented by the plaintiff: Did the trial court err in sustaining defendant's motion for a directed verdict?

The parties here present contentions which need to be decided before stating the evidence.

The case was tried upon the petition of the plaintiff and the answer of the defendant, pleading negligence and contributory negligence. Defendant contends here, the plaintiff not having replied to the answer, that contributory negligence in a degree more than slight is conclusively admitted.

The applicable rule is: While section 134 of the code (now section 25-842, R. R. S. 1943) provides that every material allegation of new matter in an answer not controverted by a reply shall for the purpose of the action be taken as true, yet a litigant will not be permitted to try his case in the district court as though a reply traversing the allegation in his answer were on file and insist in this court that no reply was filed. Crilly v. Ruyle, 87 Neb. 367, 127 N. W. 251.

This rule has been consistently followed down to and including Dinkel v. Hagedorn, 156 Neb. 419, 56 N. W. 2d 464. We see no merit in the contention.

Plaintiff contends that the defendant, in his answer to the petitions in intervention of the District, made a judicial admission of negligence. Plaintiff did not offer the answer in evidence. He claims here that defendant's negligence was rendered indisputable. The rule as stated in Bonacci v. Cerra, 134 Neb. 476, 279 N. W. 173, is: "A party may at any and all times invoke the language of his opponent's pleading, on which a case is being tried, on a particular issue, as rendering certain facts indisputable; and in doing this he is neither required nor allowed to offer such pleading in evidence in the ordinary manner."

We pointed out in In re Estate of McCleneghan, 145 Neb. 707, 17 N. W. 2d 923, that the above rule "applies only to statements in the pleadings upon which the

case is tried. It has no application to statements contained in pleadings which have been superseded by amended pleadings as in the case at bar." We have adhered to that holding. See, also, Johns v. Carr, 167 Neb. 545, 93 N. W. 2d 831; Lash v. Erisman, 167 Neb. 606, 94 N. W. 2d 32. It is patent that the case was not tried on the issues made in the proceedings in intervention. There is no merit to the contention.

Defendant took the deposition of the plaintiff before the trial. He used it for impeachment purposes at the trial. Plaintiff admitted contradictory statements with reference to speed at a point some distance before the event of the accident, the length of skid marks, and the use of or failure to use brakes.

Defendant contends that plaintiff is bound by the deposition testimony as a matter of law.

Defendant appeals to the rule stated in Gohlinghorst v. Ruess, 146 Neb. 470, 20 N. W. 2d 381, as follows: "Where a plaintiff, without reasonable explanation, testifies to facts materially different concerning a vital issue than had previously been testified to by him under oath in another action, the change clearly being made to meet the exigencies of the pending action, the evidence is discredited as a matter of law and should be disregarded. * * * A plaintiff may not recite upon oath one statement of facts in one judicial proceeding and then, to meet the exigencies of the occasion in the trial of a different suit, recite under oath an entirely different story." We there quoted from Gormley v. Peoples Cab, Inc., 142 Neb. 346, 6 N. W. 2d 78, wherein we said: "Such conduct cannot be tolerated to the extent, when it is clearly apparent, of requiring a trial judge to submit the credibility of such testimony to a jury, and of permitting a party to mock law and justice." That decision goes back to Peterson v. Omaha & C. B. St. Ry. Co., 134 Neb. 322, 278 N. W. 561, wherein we held: "Testimony of a witness on a vital point in a case, materially changed to obviate objections

pointed out by this court on a former appeal, without any sufficient explanation given, is discredited as a matter of law, and will be disregarded."

There have been several subsequent decisions dealing with the same matter. In Armer v. Omaha & C. B. St. Ry. Co., 153 Neb. 352, 44 N. W. 2d 640, we held: "An unexplained change in the evidence of a litigant not required by the exigencies pointed out in a previous trial is a matter of impeachment, credibility, and weight for the jury to determine."

In Dorn v. Sturges, 157 Neb. 491, 59 N. W. 2d 751, we held: "We are not in accord with defendant's contention as to the applicability of such cases to the instant case. The applicable rule is that extrajudicial statements of fact made by a party relating to matters material to the issues in a controversy are available to the adverse party in a trial thereof as admissions against interest or for impeachment. Such statements are, however, not conclusive but may be explained, rebutted, or contradicted, and thereafter are to be given such weight as the trier of the facts deems them entitled."

In Angstadt v. Coleman, 156 Neb. 850, 58 N. W. 2d 507, we had a case where defendant took plaintiff's deposition and used it, as here, on cross-examination for impeachment purposes. We referred back to Kipf v. Bitner, 150 Neb. 155, 33 N. W. 2d 518. We held that the testimony involved was in the area of extrajudicial admissions to be considered by the jury.

Those cases where we have held the statements to be judicial admissions have been where it is patent that the witness deliberately changed his testimony to meet the necessities of the case, and where the change has been unexplained, or is unexplainable on any rational basis. We have then held it to be a matter of law, but otherwise it is a question of credibility for the trier of facts. We hold that the testimony here involved is one of credibility for the jury. On a motion

for a directed verdict, as here, those questions are resolved in favor of the plaintiff.

Plaintiff, by argument only, contends there was error in the rejection of certain evidence offered by him. There is no reference to it in the assignments of error. Rule 8a2(4) of the rules of this court provides: "Assignments of error relied upon for reversal and intended to be urged in the brief shall be separately numbered and paragraphed, bearing in mind that consideration of the cause will be limited to errors assigned and discussed. However, the court may, at its option, notice a plain error not assigned." This rests upon section 25-1919, R. R. S. 1943.

The tenders of evidence involved are not such as require that they be considered as plain errors not assigned.

We now reach the consideration of plaintiff's contention that the evidence as to defendant's negligence presented a jury question.

We state the evidence under the rule that a motion for a directed verdict admits the truth of all competent evidence favorable to the party against whom the motion is directed; that every controverted fact must be resolved in his favor; and that he is entitled to the benefit of every inference that can reasonably be deduced from the evidence.

This accident happened at the intersection of Underwood Avenue and the east branch of Happy Hollow Boulevard. Underwood Avenue runs east and west and is 40 feet wide at this point. Happy Hollow Boulevard runs slightly southwest of a true north and south line and at this point north of Underwood Avenue is 30 feet wide. There is a stop sign at the northwest corner of the intersection and facing Happy Hollow Boulevard. The accident happened about 5:45 p.m. on February 12, 1957. The weather was clear, the sun was shining, and the streets were free from snow or ice. Defendant was driving south on Happy Hollow Boulevard.

Plaintiff saw defendant 3 or 4 car lengths north of the intersection. Defendant's speed was then 15 to 20 miles per hour. Plaintiff kept the defendant in his field of vision. Defendant slowed down to a speed of 5 to 10 miles per hour at the stop sign. At the time defendant reached the crossing of the eastbound lane his speed was 15 to 20 miles per hour. Defendant drove on out of the intersection and stopped southwest of it. The defendant was looking straight ahead and "in a kind of an easterly direction." This, however, was when plaintiff set his brakes and defendant's car was 40 or 50 feet ahead of him.

In the meantime plaintiff was driving east on Underwood Avenue. Plaintiff was driving at about 25 miles per hour as he approached the intersection. His car was equipped with power steering and power brakes. Although he had observed the approach of the defendant from the distance stated and had kept him in his field of vision, plaintiff did not apply his brakes until defendant crossed the center line of Underwood Avenue. He then "noticed the danger." His car was then 40 to 50 feet west of the defendant's car. He applied his brakes hard enough to slide his tires and skidded in a straight line 30 to 35 feet. He supposed he could stop his car in 50 feet going at 25 miles per hour, and was sure he could stop his car in 100 feet.

Plaintiff after skidding as above stated, released his brakes, which had never been set solidly, made an abrupt turn to the left, and avoided hitting the defendant's car. These "turning marks" were 15 to 20 feet long, and darker on the right side. Plaintiff's eyewitness testified that plaintiff was "half out of control" from the time his car made the swerve. The testimony is not denied. Plaintiff's car then straightened out its course and "went on towards the northeast corner" of the intersection at a speed of 15 to 20 miles per hour. Plaintiff "possibly" put on his brakes again before going over the curb. In any event plaintiff's car went

up and over the curb and in endeavoring to go between a tree on its left and a hydrant on its right it hit both. This was not the end of the movement of the car, but as plaintiff testified he did not remember what happened after his car struck the tree, we do not detail its further movement except to say that it went on east and struck a parked car with sufficient force to materially damage both cars.

Plaintiff alleged negligence of the defendant as the proximate cause of personal injury and the damage to personal property in the following particulars: (1) In failing to observe the stop sign when entering Underwood Avenue; (2) in failing to keep a proper lookout for automobiles on Underwood Avenue; (3) in failing to yield the right-of-way; (4) in failing to sound his horn or otherwise warn plaintiff of defendant's approach; (5) in driving at a rate of speed greater than was reasonable and proper; and (6) in failing to have and keep his car under proper control.

Defendant denying negligence alleged negligence and contributory negligence of plaintiff in the following particulars as the proximate cause of the damages claimed: (1) In driving at an excessive and unlawful speed; (2) in failing to have his automobile under control; (3) in failing to accord the defendant the right-of-way; (4) in failing to seasonably apply his brakes; (5) in failing to keep a proper lookout for traffic; and (6) in operating his car on the north or left side of the avenue.

Section 25-1151, R. R. S. 1943, is involved here. We need not determine the issue of proximate cause. In Hickman v. Parks Construction Co., 162 Neb. 461, 76 N. W. 2d 403, 62 A. L. R. 2d 1040, we held: "The following are elements of application of the comparative negligence rule: If it appears that a defendant has been guilty of gross negligence and a plaintiff has been guilty of slight negligence by comparison with that of the defendant the plaintiff may recover. If a defendant

has been guilty of gross negligence and a plaintiff has been guilty of negligence more than slight by comparison with that of the defendant the plaintiff may not recover. If a defendant has been guilty of negligence but which is less than gross and the plaintiff has been guilty of negligence in any degree the plaintiff may not recover."

Even if we were to hold, which we do not, that the defendant was guilty of gross negligence, it is obvious that plaintiff was guilty of negligence more than slight by comparison.

We held in Rogers v. Shepherd, 159 Neb. 292, 66 N. W. 2d 815, that: "In an action based on negligence to which the comparative negligence rule has application wherein the evidence shows beyond reasonable dispute that the plaintiff's negligence was more than slight in comparison with that of the defendant the action should be dismissed or verdict directed."

Putting aside contradictions and inconsistencies, and considering plaintiff's version of this accident in its most favorable light to him, we think it beyond reasonable dispute that plaintiff was guilty of negligence more than slight under the above rule. The trial court did not err in sustaining the motion.

The judgment of the trial court is affirmed.

AFFIRMED.