FRED L. AYE, APPELLEE AND CROSS-APPELLANT, v. ROBERT J. GARTNER, DOING BUSINESS AS UNIVERSAL EXTENSION SERVICE, APPELLANT AND CROSS-APPELLEE.

108 N. W. 2d 798

Filed April 28, 1961. No. 34902.

*Cunningham & Cunningham,* for appellant.

*Robert V. Hoagland* and *Kelly & Kelly,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BROWER, J.

Plaintiff below and appellee brought this suit in equity for an accounting against defendant and appellant alleging an oral contract with the defendant providing, first, for the payment of accrued commissions as a sales representative and, second, for 10 percent commission as sales manager on the net profits of the defendant's business during a portion of the period of employment. The prayer was for production of defendant's books, an accounting, and judgment for $6,500. The plaintiff admits he was paid in full up to the time of the termination of his employment on May 7, 1956, both as to the commissions as salesman and the 10 percent net as sales manager. He claims, however, commissions on certain time sales which had not been paid in full and where the balance was to be paid in installments and were. collected by defendant after termination of his employment. Plaintiff also claims the 10 percent commission on the net profits of the business of the defendant was to be paid after this termination.

An auditor employed by the plaintiff found that the

accrued commissions on the particular sales of the plaintiff that came in after such termination were $2,406.16, and that the net profits of business for 6 months after said termination was $27,211.60, making said 10 percent net during said period $2,721.16.

Defendant filed an answer admitting the employment under a contract providing for payments practically as set out by the plaintiff except he alleged such payments were made only during the period of employment. He also set out a cross-petition alleging certain damages to his business arising out of alleged disclosure of confidential matters by plaintiff to competitors of the defendant and certain misrepresentations made by plaintiff to purchasers.

The trial court found for the plaintiff as to the deferred commissions as a salesman called "accruals" and against him as to the net profits of the business coming in after May 1956; dismissed the defendant's cross-petition and entered judgment for plaintiff in the sum of $2,406.16; and also allowed the plaintiff as costs the expense of auditing the defendant's books by his auditor in the sum of $485.

Defendant appealed, making numerous assignments of error. Those of which it will be necessary to consider here are as follows: First, that the judgment is contrary to the evidence and that the plaintiff did not prove by a preponderance of the evidence an agreement by which he was entitled to the payment of accrual commissions after the termination of his employment; second, that the plaintiff had admitted under oath that no accrual payments were ever paid by the defendant after termination of such employment or were to be paid to the plaintiff, and that he was bound by such admission as a matter of law as a judicial admission, and that the court below erred in not so ruling; and third, that the court erred in taxing as costs the expense of the plaintiff's auditor in auditing defendant's books.

Plaintiff in his cross-appeal makes claim for the 10

percent of the net profits of the defendant's business on contracts written while he was sales manager.

Defendant operates the Universal Extension Service offering for sale home study and correspondence courses. In October of 1954, plaintiff expressed a desire to go to work for the defendant and after a discussion on or about October 15, 1954, plaintiff was employed by oral agreement as a salesman to sell home study courses on a commission basis. Originally plaintiff was to receive $60 for each cash contract sold and up to $50 commission on each time payment contract. A cash sale of a civil service course on which the plaintiff worked a good portion of his employment was $170 to the purchaser and the time price was $194.50. Plaintiff was to receive a bonus of $100 on every 25 enrollments. On time sales the student paid $25 down and the salesman got $15 of it and the company $10, and thereafter the salesman got 50 percent of the subsequent payments until he received his full commission. It is the salesman's portion of these subsequent payments of installment sales that are referred to throughout this suit as "accruals." The plaintiff continued his employment steadily from November 1954, to March 1, 1955. In March 1955, he stopped working for the defendant at Grand Island but under just what circumstances is in dispute. Defendant claims it was agreed that the plaintiff would leave Grand Island and would temporarily stop selling courses for the defendant and as a salesman would secure information and promotion ideas from other schools, and that defendant agreed to pay him accruals on all contract payments made until plaintiff's return to Grand Island. Plaintiff asserts that he left the employment of the defendant, and went to work for another home study course institution at Louisville, Kentucky, and that he was sought out by the defendant to return to defendant's employ.

At any rate plaintiff shortly returned to work and it was agreed that the plaintiff receive also 10 percent of

the net profits of the business as a sales manager in addition to his commissions as a salesman.

Plaintiff worked under this second agreement until May 1, 1956. According to defendant plaintiff was then discharged because of certain false representations he had made to purchasers and breach of his confidence to other like businesses. Plaintiff on one occasion says he handed in his "leads" or list of prospects and left, saying he would have to get going. Then again he states his employment had not yet terminated and that he was still an employee and was on inactive status, but was still sales manager. And at another time he said that he just quit. He immediately went to work at Lincoln for John T. Rose and never again worked for defendant.

This being a case in equity it must be tried de novo. The real questions are concerning the agreement of the parties and particularly, (1) was the plaintiff to be paid as sales manager the 10 percent net profit on the entire business of the defendant after leaving his employment, and (2) was he to receive the balance of his commission on the contracts actually written by him as a salesman that were collected after his employment stopped, referred to as "accruals"?

The first question in regard to the 10 percent net we believe is disposed of by the pleading itself. The only reference in the amended petition to this 10 percent and the manner and the period over which it was to be paid is in paragraph III which reads as follows: "Plaintiff further alleges, that on or about May 1, 1955, he again, at the defendant's request was employed by the defendant upon the terms hereinabove set forth in paragraph 1 of this petition, but that in addition thereto, the plaintiff was further employed as, and appointed sales manager for all of the defendant's activities in connection with his school and as additional compensation, therefor, the plaintiff was to be paid the sum of 10 percent of the entire net profits of the business school *while he was so employed.* Said additional compensation as sales

manager was to be paid on a monthly basis. Said condition of employment existed until May 1, 1956, that said agreement was oral." (Emphasis ours.)

This pleading was the one under which this case was tried. It clearly states the plaintiff was to receive such compensation "while he was so employed." This clearly comes within the rule of judicial admissions as defined by the holdings of this court. Bonacci v. Cerra, 134 Neb. 476, 279 N. W. 173; Kipf v. Bitner, 150 Neb. 155, 33 N. W. 2d 518; Johns v. Carr, 167 Neb. 545, 93 N. W. 2d 831. These cases and many other decisions of this court lay down the rules. As stated in Johns v. Carr, *supra:* "A party may at any time invoke the language of the pleading of his adversary on which the case is tried, on a particular issue, as rendering certain facts indisputable.

"An admission made in a pleading on which the trial is had is a judicial admission and constitutes a waiver of all controversy so far as the adverse party desires to take advantage of it and is therefore a limitation of the issues."

The trial court below found that the plaintiff had admitted he was only entitled to the 10 percent net overall commission until he stopped working. It disallowed this after he stopped work and we think the pleading required it to do so. This likewise disposes of plaintiff's cross-appeal.

We come now to the claim for the so-called "accruals," being the unpaid portion of the plaintiff's commission as a salesman received after the termination of employment. In a deposition taken April 6, 1960, the day before trial and admitted in evidence at the trial on motion of plaintiff without objection, the testimony of the plaintiff seems quite clear that he understood the defendant had not agreed to pay any such accruals after the termination of the employment. His testimony is as follows: "Mr. Hoagland: When you said we settled all up, by that, it did not include the accruals?

A. No. Mr. Cunningham: I will object to that. A. No, he didn't. Mr. Hoagland: I was just trying to clarify the question. But that did not represent any accruals? A. He paid me only up to the day that I had left and there was no advance on accruals that I still had, no. Mr. Cunningham: You knew no accruals had been paid? A. He made the brag several times. I know of three men who came after that that left Mr. Gartner. He said try and get them, but he did make a complete settlement with one man at the time he left. Mr. Cunningham: Who was that man? A. Mr. John T. Rose. He made a flat settlement for all—for the accruals off of Mr. Rose—for what he had wrote. Mr. Cunningham: But you had no agreement like that? A. No, *none whatsoever*, but it's customary in the home study industry to pay a man for accruals for a term of six months after termination. (Emphasis supplied.) Mr. Cunningham: But when you took your employment there you knew there would be— A. He told me, but in the back of my mind I very much doubted his statement. Mr. Cunningham: That's all. Mr. Hoagland: In other words, part of your oral agreement when you went to work for Mr. Gartner, you were to be entitled to your accruals? Mr. Cunningham: Just a minute. You're injecting something—you're testifying— Mr. Hoagland: Go ahead. Mr. Cunningham: We'll object to that as a conclusion; what was said. A. *It was my understanding he stated to me he never paid any accruals, never, but after my friend, Mr. Rose, had told me he got his, there was no reason in my mind I should not get mine.* (Emphasis supplied.) Mr. Cunningham: How long would you say it was that Mr. Rose got his? A. Approximately 60 days after Mr. Rose left Mr. Gartner. Mr. Cunningham: How long had you been there at that time? A. With Mr. Gartner? this last interim? Mr. Cunningham: How long had you been there when you found out Rose got his accruals? A. Oh, I'd say a couple—three months afterwards, somewhere in there.

Mr. Cunningham: Is this Mr. Rose sitting over here to my left? A. That's correct. Mr. Cunningham: That's all. Mr. Hoagland: In other words, Mr. Aye, from the period of time you were working for Mr. Gartner and you were selling these advance courses to which you were entitled to a certain percentage that you have testified to, and in addition to that it was part of your agreement that you were entitled to the accruals on these various contracts? A. That's right. Mr. Cunningham: That was your understanding? A. That's right, my understanding."

Defendant urges because of this testimony and particularly the portion we have placed in italics that these statements were likewise judicial admissions and that the plaintiff is bound by them and they cannot be controverted. With this view of the law we cannot agree.

The effect of such adverse testimony is quite fully discussed in Kirchner v. Gast, 169 Neb. 404, 100 N. W. 2d 65. In that case this court distinguished, first, between admissions appearing in the pleading and admissions in the evidence and, second, differentiated as to the effect of admissions in the evidence, holding that if a party, without reasonable explanation, testifies to facts materially different concerning a vital issue than had previously been testified to by him under oath in another action, the change clearly being made to meet the exigencies of the occasion, the evidence is discredited as a matter of law and should be disregarded. But the court distinguished this from the situation where damaging statements are made by a party in his oral testimony in one and the same proceeding. Speaking of oral admissions of a party made in the same proceeding, the court said: "Extrajudicial statements of fact made by a party relating to matters material to the issues in a controversy are available to the adverse party in a trial thereof as admissions against interest or for impeachment. Such statements are, however, not conclusive but may be explained, rebutted, or contradicted, and

thereafter are to be given such weight as the trier of the facts deems them entitled."

The matter is further discussed in Vermaas v. Heckel, 170 Neb. 321, 102 N. W. 2d 647, wherein this court, discussing the evidence required to overcome the effect of a party's self-injurious statement, cites the majority rule in the note in 169 A. L. R. under the annotation of "Binding effect of party's own unfavorable testimony" under IV b, at page 805, to the effect that the party's own testimony is available for that purpose as well as that of other witnesses. We think, as the court held in Vermaas v. Heckel, *supra,* that the statements of plaintiff are only an item of evidence in the mass of evidence adduced during trial, admissible in contradiction and impeachment of the plaintiff's claim and his other evidence concerning that claim.

In this case no one but the plaintiff and defendant testified as to the hiring contract with respect to the payment of these "accruals." The defendant testified he never paid the "accruals" after the termination of the employment and had fully explained that fact to plaintiff before his employment.

These extrajudicial admissions in plaintiff's testimony are nevertheless considered by us in the trial of this case de novo. We think they go a long way towards controverting plaintiff's subsequent testimony that it was agreed between himself and the defendant that he be paid his accruals as salesman even after he left the defendant's employ. Further plaintiff admits that when he left defendant's employ defendant had made advancements or loans to him; and that he received payment by defendant's checks for his commision as a salesman and also for his 10 percent overall net commission as sales manager. He admits he then endorsed these checks and delivered them to defendant to take up this debt leaving a small amount of $25 or $35 owing him which defendant paid to him; and that they thereupon parted even on that date. Plaintiff testified

he was hard up while working for defendant. It seems unusual indeed that a salesman who was hard up should pay his indebtedness in full if he really considered the defendant would shortly be owing him a considerable amount on "accruals." The plaintiff also testifies that he never asked the defendant for any payment or accounting for almost 3 years after he quit the defendant's employ; and that the first inquiry was directed to defendant by letter from plaintiff's attorney about that time. The original petition was filed in February 1959, nearly 3 years thereafter. In that petition, which was admitted in evidence, nothing was said about plaintiff expecting or claiming payments of either accruals or 10 percent net profits of the business after his employment terminated. It appeared to be a suit for an accounting and payments due during his employment. It alleges plaintiff quit work May 1, 1956, among other reasons, because defendant had not paid him or accounted. This petition was verified by plaintiff and he testified he had informed his attorney of his claim and had read the petition before signing it. There were many other contradictions in the plaintiff's testimony. Plaintiff's evidence as to whether or not he left, quit, or was still an employee and sales manager of the defendant hitherto mentioned, is self-contradictory.

At the time of taking the deposition on April 6, 1960, plaintiff testified that he was to receive the 10 percent net overall commissions for a period of 6 months after he left the defendant's employ. The next day at the trial he stated he was to have it until the time payment contracts had been completely paid out.

In view of the many contradictions and inconsistencies in the plaintiff's testimony; the extrajudicial admission which practically agreed with the defendant's theory of the case; the unusual payment of his indebtedness to defendant out of his last checks in view of the present contention that he was to be paid "his accruals" out of money to be received by the defendant after quitting

his employment; his failure to make claim on the defendant for almost 3 years; and his bringing suit without pleading in his original petition that he was to receive payments after stopping work, we are forced to the conclusion that the plaintiff did not meet the burden of proof and that the finding of the trial court and entering of judgment in his favor should be reversed. In view of this finding it is unnecessary to consider the question of the allowance of the fees of the plaintiff's accountant as costs.

The defendant has not seriously raised a question as to his cross-petition. Neither do we think the evidence shows any damage of consequence.

The judgment of the trial court is reversed and the cause remanded with directions to dismiss the plaintiff's petition and the defendant's cross-petition at the plaintiff's cost.

REVERSED AND REMANDED WITH DIRECTIONS.