ROY KIPF, APPELLEE, v. ANITA J. BITNER, APPELLANT.

33 N. W. 2d 518

Filed August 6, 1948. No. 32463.

*Davis, Stubbs & Healey,* for appellant.

*Sterling F. Mutz,* for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

Chappell, J.

This action was brought to recover for personal injuries and property damages arising out of a collision between plaintiff's motorcycle and defendant's automobile, at an intersection upon which traffic was controlled by an overhead signal light. Upon trial to a jury, plaintiff was awarded a verdict and judgment. Defendant's motion for new trial was overruled, and she appealed, assigning substantially that the trial court erred: (1) In overruling defendant's motion for a directed verdict; (2) in giving instruction No. 2; and (3) that the verdict and judgment were contrary to the law and the evidence. We conclude that the assignments should not be sustained.

Without dispute, the accident occurred in the intersection of 48th and O Streets in Lincoln, between 4:35 and 4:40 p. m., October 4, 1946. It was cloudy, misty, and drizzling rain. The pavement was wet. Prior to the accident, plaintiff was driving his motorcycle west, and defendant was driving her automobile east on O Street. The overhead signal light was green for east and west traffic at the time of the accident.

The record discloses that the pavement on O Street and on 48th Street south of O Street was 30 feet wide from curb to curb, but the pavement on 48th Street north of O Street was 42 feet wide from curb to curb. The width of the intersection was 120 feet between property lines on the north side, and 66 feet on the south side of O Street. Therefore, the angling curb lines on the northwest and northeast corners of the intersection were constructed in a wider arc for the movement of traffic into 48th Street from O Street, or into O Street from 48th Street. Thus, with the property lines extended on this intersection of varying dimensions, a vehicle coming from the east on O Street would enter the intersection approximately 50 feet east of the center line of 48th Street, and a vehicle coming from the west

on O Street would enter the intersection approximately 45 feet west of the center line of 48th Street.

A plat, drawn to scale, and appearing in the record as offered by plaintiff, illustrates the foregoing situation. It also demonstrates, by designation, the manner and circumstances of the accident, together with the point of impact as supported by evidence adduced in plaintiff's behalf. Photographs appearing in the record also illustrate the topography of the intersection, and its approaches. Also appearing in the record, as offered by plaintiff, are photographs taken three or four minutes after the accident. They graphically illustrate the approximate position of the vehicles at the time of the impact and after the accident, since competent evidence disclosed that they moved but little, if any, after the impact. They also picture defendant sitting in her car, with two other passengers, and plaintiff lying injured where he fell on the pavement.

Evidence adduced in plaintiff's behalf, as summarized, was substantially as follows: Plaintiff, with a co-employee friend riding behind him on plaintiff's motorcycle, equipped for two passengers, left their place of employment at 65th and O Streets immediately after 4:30 p. m., and proceeded west in the right lane of traffic. His windshield served only as such, and coming up only about to his shoulders, enabled him to see over the top of it. At a slow sign some distance east of 48th Street, plaintiff, traveling at 25 miles an hour, shifted into intermediate and slowed down. As he approached the intersection of 48th and O Streets, the traffic light was green. When he was in the intersection about 10 feet west of the east property line of 48th Street extended, and driving at 17 or 18 miles an hour, plaintiff saw defendant's car coming east in the south lane of O Street about 25 feet west of the intersection. He could not estimate her speed. Plaintiff proceeded on west in the intersection, and while traveling at about 15 miles an hour, saw defendant suddenly, without previously having given any

signal or warning, come on out in a circular angle to the northeast, and cross the center line of O Street at a point west of the intersection. Thereupon, plaintiff turned north and west to avoid collision, but, upon seeing that one was imminent, first shut off the gas, and then applied his brakes, but the vehicles collided at a point, as shown on the plat, in the northwest corner of the intersection approximately 35 feet west of the center line of 48th Street and 25 feet north of the center line of O Street, or approximately 40 feet northwest of the overhead signal light, 20 feet northeast of the west property line of 48th Street extended, and 10 feet southeast of the west curb as it curved to the northeast in forming the west curb line of 48th Street.

At the time of the collision, plaintiff was traveling about eight miles an hour, and defendant was traveling five or six miles an hour. The front wheel of plaintiff's motorcycle and defendant's front bumper collided to the right of the center of defendant's car. The photographs so disclose. After collision, the vehicles both stopped immediately, with the motorcycle under the front of the car. Its motor was still running, whereupon someone stopped it, pulled the motorcycle from under and stood it upright near the car, which car then moved forward about a foot, where the vehicles remained when the photographs were taken.

Plaintiff was thrown by the impact northwest over his windshield to the pavement, where he lay six or eight feet northwest of the point of impact. He was conscious, but concededly received serious and permanent injuries, disability, and damages, the amount of which was not questioned here. As he lay in the street, plaintiff noticed that defendant's windshield was hazed over with mist and rain.

The other rider of the motorcycle, who, being taller than plaintiff could see over him, substantially corroborated plaintiff's testimony in its material aspects. He was thrown into the grille of defendant's car, and then

over its hood to the pavement three or four feet north of defendant's car, where, injured, he crawled or dragged himself on his side, three or four feet to the curb.

Another fellow employee of plaintiff, also proceeding west on O Street in a car, arrived at the scene of the accident almost momentarily after it happened, and, being an amateur photographer, forthwith took the photographs which generally supported and corrobrated the material evidence adduced by plaintiff and in his behalf.

Evidence adduced in defendant's behalf was substantially as follows: There were two other ladies with defendant in her Plymouth coupé as it was being driven east on O Street. Concededly, the windshield wiper on the left or defendant's side was working, but the one on the other side was not working. Defendant testified, however, that she had very clear vision, and that after the accident her windshield was hazed over by the escape of fluid from her car radiator. As defendant came up the hill before reaching the intersection, the light was red, and there were no cars in front of her. The light turned green when she was about 125 feet west of the intersection, and she thereafter put out her hand straight to give a signal for a left turn, and continued to do so for 110 or 115 feet, until she arrived at the point of turning. Defendant noticed plaintiff's motorcycle coming from the east, but thought it was still far enough back to give her time to make a safe turn to the left, and she did so. After she had turned slightly, the motorcycle, much farther back, approached, a little out of control, at a speed estimated at 35 or 40 miles an hour, more speed than she had anticipated, and it weaved and turned directly northwest into her pathway, striking her car almost directly in front of the driver's seat. She testified that the impact, which knocked the car up and back, was at a point where her car was over the center line of O Street, not quite its full length, and at a point north of the west curb of 48th Street on the south side.

One of the occupants of defendant's car, seated on the right side, testified that before making the turn she saw the motorcycle coming, but it had not yet reached the intersection. Defendant held out her arm until she started to turn, making a little short turn across the center of O Street, about four feet east of the curbing on the west side of 48th Street going north, at which time plaintiff's motorcycle, weaving and coming pretty fast, 35 miles an hour, suddenly veered north and west. She did not see it strike defendant's car, but felt the jolt of the impact. Rain and mist were on the windshield on her side because the wiper was not working there.

A witness testified that, standing at the southeast corner of the intersection, he saw plaintiff about 100 yards east of the intersection, and estimated his speed as then being 35 miles an hour. He testified that when it was about 20 yards from the intersection and defendant was just beginning to make the turn, plaintiff applied his brakes, about the only thing he could have done because the pavement was slippery, and the impact occurred about five feet north of the center line of O Street, and parallel with the curb line on the west side of South 48th Street, after which both vehicles moved slightly northeast.

Another witness testified that, standing at the northeast corner, he did not see defendant's car, but saw plaintiff about 75 yards away, coming toward the intersection at about 25 or 30 miles an hour.

A police officer who arrived at the scene, testified that from oil and debris on the pavement, it appeared that the impact occurred 33 feet west of the center line of 48th Street and 8 feet north of the center line of O Street, and that the vehicles had come to rest north of that point. Another witness testified that he stepped off the distance from debris on the pavement, and that the impact was 30 feet west and 5 feet north of the overhead traffic signal.

The driver of a taxicab which stood on the north side of

O Street, west of but near the center line of 48th Street, waiting for the light to turn green so he could proceed straight south, testified he saw defendant give a left-hand signal for about 50 feet. He testified that she stopped three or four seconds waiting for a car to go west, and then started to turn. The witness did not see the impact, but testified that just guessing, he thought it occurred at a point where defendant's front wheels were about four feet north of the center of O Street, and between 15 and 30 feet west of the overhead signal light.

The pleadings raised the issues of defendant's negligence and plaintiff's contributory negligence as an affirmative defense. In the foregoing situation, without question those issues and the amount of plaintiff's damages, if recoverable, were for determination by the jury under appropriate instructions. The applicable rules are: "A motion for directed verdict must, for the purpose of decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and such party is entitled to have every controverted fact resolved in his favor and have the benefit of every inference that can reasonably be deduced from the facts in evidence. * * *

"Where different minds may reasonably draw different conclusions from the evidence adduced or if there is a conflict in the evidence as to whether or not they establish negligence or contributory negligence, and the degree thereof, when one is compared with the other, such issues must be submitted to the jury." Roby v. Auker, 149 Neb. 734, 32 N. W. 2d 491. See, also, Thomison v. Buehler, 147 Neb. 811, 25 N. W. 2d 391.

Instruction No. 2, about which defendant complained, purported to summarize and submit the allegations of negligence pleaded in plaintiff's petition. To recite its content herein would serve no useful purpose and would unduly prolong this opinion. It is sufficient to say that the allegations of alleged negligence submitted thereby

were each and all amply supported by competent evidence adduced in plaintiff's behalf. That conclusion is unquestionable unless plaintiff's own evidence, given at the trial, should be, as argued by defendant, discredited and disregarded as a matter of law.

In that regard, defendant's principal argument, as primarily related to the merits of all her assignments of error, was based upon that contention.

The circumstances raising that question were that in a deposition of plaintiff taken by defendant 11 days before the trial, plaintiff testified substantially that he first saw defendant's car when he was approximately even with the center line of 48th Street, at which time defendant's car, 40 feet away, something like that, was headed in a northeasterly direction, more east than north, cutting across the intersection or street, half over the center line of O Street, coming right out into his lane of traffic. Defendant did not offer the deposition as evidence, but on cross-examination, plaintiff substantially admitted, with qualifications, that he so testified in the deposition. Defendant called our attention to the fact that plaintiff, on direct examination at the trial, testified that he first saw defendant's car when he was about 10 feet in the intersection, and that defendant was then in the south lane of traffic on O Street about 25 feet west of the west property line of 48th Street.

In the light of the foregoing, defendant's primary contention was that such alleged inconsistency under oath precluded plaintiff from any recovery by reason of the holdings in Ellis v. Omaha Cold Storage Co., 122 Neb. 567, 240 N. W. 760; Peterson v. Omaha & C. B. Street Ry. Co., 134 Neb. 322, 278 N. W. 561; Bonacci v. Cerra, 134 Neb. 588, 279 N. W. 314; Gormley v. Peoples Cab, Inc., 142 Neb. 346, 6 N. W. 2d 78; and Gohlinghorst v. Ruess, 146 Neb. 470, 20 N. W. 2d 381. We cannot sustain that contention because those cases are distinguishable from the one at bar, not only upon the facts but also upon the law,

and in any event there was other competent evidence in the record amply sufficient to sustain the judgment.

They were all cases wherein plaintiff pleaded and testified to one story in one or more actions or trials, and after obtaining a benefit therefrom, or imposing a detriment thereby, it was found that they could not thus substantiate their claim, in which event they materially and substantially changed their testimony or pleadings and testimony in another trial, manifestly with a fraudulent motive for the purpose of obviating objections pointed out by the court in a former trial, or to meet the exigencies of their case, and, by thus experimenting and toying with litigants in courts, they vainly sought to obtain a recovery. That such cases were so limited was affirmed in Gutoski v. Herman, 147 Neb. 1001, 25 N. W. 2d 902.

The cases relied upon by defendant were all in the final analysis grounded primarily upon elements of estoppel. The case at bar contains none of such elements which could make plaintiff's testimony, given in his deposition, conclusive upon him or discredit, as a matter of law, all his testimony given at the trial. Rather, plaintiff's testimony, about which defendant complained, must be classified in the field of admissions. In the law of evidence, admissions are concessions or voluntary acknowledgments made by a party of the existence of certain facts, and they are designated generally as extrajudicial or quasi admissions, and judicial or true admissions. 31 C. J. S., Evidence, § 270, p. 1022.

As stated in 4 Wigmore on Evidence (3d ed.), § 1058, p. 20, and § 1059, p. 21: "The law of Evidence has suffered, in its most vital parts, from an ailment almost incurable, - that of confusion of nomenclature. The term 'admissions' exhibits this misfortune in one of its notable aspects. There are two principles, not at all connected, which for a century or more have had to be discussed by the aid of a single and common term. One * * * authorizes the receipt of any statement made by an opponent, as evidence in contradiction and impeachment of his

present claim. (The form of which, if admissible, is immaterial. It may be oral or written or it may be a sworn statement, as for example a deposition. 3 Wigmore on Evidence (3d ed.), § 1040, p. 727.) Such statements * * * should better * * * be designated Quasi-Admissions.

"The true Admission, in the fullest sense of the term, is another thing, and involves a totally distinct principle. It concerns a method of escaping from the necessity of offering any evidence at all. The former (quasi admissions) is an item in the mass of evidence; the latter (judicial admissions) is a *waiver relieving the opposing party from the need of any evidence.* * * *

"An Admission, in the latter and correct sense, is a formal act, done in the course of judicial proceedings, which waives or dispenses with the production of evidence, by conceding for the purposes of litigation that the proposition of fact alleged by the opponent is true. * * *

"A quasi-admission * * * being nothing but an item of evidence, is therefore *not in any sense final or conclusive.* The opponent, whose utterance it is, may none the less proceed with his proof in denial of its correctness; it is merely an inconsistency which discredits, in a greater or less degree, his present claim and his other evidence.

"No one would ever have entertained doubts on this point, had not the two doctrines noticed in the preceding sections tended, by their superficial resemblance to the present doctrine, at certain points to produce confusion, - namely, the doctrines of estoppel and of judicial admission. An Estoppel, *i. e.* a representation acted on by the other party, by creating a substantive right does oblige the estopped party to make good his representation, - in other words, but inaccurately, it is conclusive. So, too, but for an entirely different reason, a Judicial Admission is conclusive, (unless the court in the exercise of its judicial discretion relieves from that consequence. 9 Wigmore on Evidence (3d ed.), § 2590,

p. 588) in the sense that it formally waives all right to deny, for the purposes of the trial, i. e. it removes the proposition in question from the field of disputed issues. But statements which are not estoppels nor judicial admissions have no quality of conclusiveness, and on principle cannot have.

"This has always been conceded by the judges, in modern times. * * *

"The only instances in which any apparent contradiction may be found are those in which questions of Estoppel * * * were under discussion." See, also, 9 Wigmore on Evidence (3d ed.), § 2588, p. 586, § 2589, p. 587, § 2590, p. 587; 31 C. J. S., Evidence, § 379, p. 1164, § 380, p. 1164, § 381, p. 1170; 22 C. J., Evidence, § 502, p. 417, § 505, p. 421.

The deposition herein was not made any part of plaintiff's evidence adduced in this or any other action. It contained no relevant judicial admission, as heretofore defined. It was never used by plaintiff for his own purposes or benefit to the detriment of defendant. It was not inconsistent with or contrary to any allegation of plaintiff's petition. It was taken by defendant for her own purposes and benefit, and rightly used by her as such on cross-examination, simply to contradict and impeach the plaintiff's present claim and his other evidence given at the trial. It was in the same category as an original petition filed in an action, which petition has been inconsistently amended. In such a situation, the original is competent but not conclusive evidence, which may be offered as an admission against interest to be given such weight as the trier of fact deems it entitled. Arman v. Structiform Engineering Co., 147 Neb. 658, 24 N. W. 2d 723.

The evidence in the case at bar, about which defendant complained, was at most only an extrajudicial or quasi admission, involving no element of estoppel. While admissible as an admission against interest, to be given such weight as the jury deemed it entitled, it was not

conclusive and could not discredit all of plaintiff's testimony given at the trial or preclude his recovery as a matter of law.

We conclude that the issues presented were for the jury, and that the judgment was amply sustained by the evidence and in conformity with the law.

For the reasons heretofore stated, the judgment of the trial court should be and it hereby is affirmed.

AFFIRMED.

CARTER, J., participating on briefs.