CORNIEL R. VERMAAS, APPELLANT, v. VERNON E. HECKEL,
APPELLEE.

102 N. W: 2d 647

Filed April 22, 1960.   No. 34682.

*Wagener, Marx & Galter,* for appellant.

*Chambers, Holland, Dudgeon & Hastings,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Lancaster County. It involves an action brought by Corniel R. Vermaas to recover damages from Vernon E. Heckel because of personal injuries which plaintiff claims he suffered in an automobile accident, which accident, plaintiff alleges, was caused by defendant's negligence. Trial was had and the jury returned a verdict for the defendant. Plaintiff thereupon filed an alternative motion asking the trial court to give him either a judgment notwithstanding the verdict or a new trial. This motion the trial court overruled and the plaintiff has perfected this appeal therefrom. We shall herein refer to the parties as they appeared in the court below.

The accident in which plaintiff claims he was injured happened about 3:45 p.m., on Saturday, October 4, 1958, in the intersection of Twenty-sixth and R Streets in Lincoln, Nebraska. The weather was good and the streets were dry. R Street runs east and west. It is hard surfaced between curbs, which are 40 feet apart. It is an arterial street protected by stop signs between Seventeenth and Twenty-seventh Streets, carrying a maximum speed limit of 35 miles an hour. Twenty-sixth Street runs north and south, having a hard surfaced area between its curbs which are 30 feet apart. There is a 13-foot set-off on Twenty-sixth Street at the intersection, Twenty-sixth Street north of R Street being located 13 feet farther to the west than it is south thereof. There are stop signs on Twenty-sixth Street as it enters R Street at both the northwest and southeast corners of the intersection. Plaintiff was, at the time, riding in a 1949 Plymouth automobile owned by

Elmer L. Keefover and being driven by him north on Twenty-sixth Street. Defendant was, at the time, driving his 1954 Hudson west on R Street. The accident happened at a point in the intersection approximately 6 feet north of the center of R Street when the left front of the Hudson ran into the right rear side of the Plymouth. After the impact the Hudson was standing in the intersection at about the point of the impact, facing west, whereas the Plymouth had skidded sideways, turned around, and ended up just out of the intersection to the north on Twenty-sixth Street. It was near the west curb thereof facing southeast, being some 35 feet from the point of the impact.

Plaintiff suggests the questions involved are as follows: "Did the defendant's judicial admissions establish, as a matter of law, that defendant was guilty of negligence which proximately caused the accident"; and "Did the trial court err in overruling plaintiff's motion for a directed verdict on the question of liability?" It should here be stated that plaintiff moved for a directed verdict against the defendant on the issue of defendant's liability after both parties had rested, which motion the trial court overruled. Plaintiff assigns as error the court's ruling doing so.

"Where the evidence on the trial in the district court is not conflicting, and reasonable minds cannot differ as to the conclusion to be derived therefrom, it is the duty of the court, when requested, to direct a verdict in accordance with such conclusion." Nebraska Transfer Co. v. Chicago, B. & Q. R. R. Co., 90 Neb. 488, 134 N. W. 163. See, also, Swanback v. Sovereign Camp, W. O. W., 103 Neb. 34, 170 N. W. 354.

"A motion for directed verdict or for judgment notwithstanding the verdict must, for the purpose of decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact

resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence." Stark v. Turner, 154 Neb. 268, 47 N. W. 2d 569. See, also, Anderson v. Evans, 164 Neb. 599, 83 N. W. 2d 59.

However, as stated in Kipf v. Bitner, 150 Neb. 155, 33 N. W. 2d 518: "Where different minds may reasonably draw different conclusions from the evidence adduced or if there is a conflict in the evidence as to whether or not they establish negligence or contributory negligence, and the degree thereof, when one is compared with the other, such issues must be submitted to the jury." See, also, Burhoop v. Brackhan, 164 Neb. 382, 82 N. W. 2d 557.

Plaintiff contends the facts to which defendant testified in open court constitute judicial admissions which were binding upon him and which amounted to a waiver of all controversy as to those facts. Based on this contention plaintiff claims these admissions by defendant establish that he failed to maintain a proper lookout and that he did not have his vehicle under reasonable control.

"A person traveling a favored street protected by a stop sign, of which he has knowledge, may properly assume that oncoming traffic will obey it." Riekes v. Schantz, 144 Neb. 150, 12 N. W. 2d 766. See, also, Paddack v. Patrick, 163 Neb. 355, 79 N. W. 2d 701; Angstadt v. Coleman, 156 Neb. 850, 58 N. W. 2d 507.

However, we have said: "Even though the driver of a car has the right-of-way at an intersection he still has duties in regard to other cars which are approaching and entering it at about the same time." Burhoop v. Brackhan, *supra*. See, also, Bezdek v. Patrick, 167 Neb. 754, 94 N. W. 2d 482; Barajas v. Parker, 165 Neb. 444, 85 N. W. 2d 894; Maska v. Stoll, 163 Neb. 857, 81 N. W. 2d 571; Styskal v. Brickey, 158 Neb. 208, 62 N. W. 2d 854.

And, in that respect, we have held: "The failure of

the driver of an automobile, upon approaching an intersection, to look in the direction from which another automobile is approaching, where, by looking, he could see and avoid the collision that resulted, is more than slight negligence, as a matter of law, and defeats a recovery." Fairchild v. Sorenson, 165 Neb. 667, 87 N. W. 2d 235. See, also, Bezdek v. Patrick, *supra;* Barajas v. Parker, *supra.*

It is these latter decisions which plaintiff contends are here controlling. In order to determine that question it is necessary to discuss what are judicial admissions for defendant gave contradictory versions in regard to the facts which plaintiff contends are here controlling and there is other evidence in the record relating thereto.

We said in Kipf v. Bitner, *supra,* that: " 'Admissions' in the law of evidence are concessions or voluntary acknowledgments made by a party of the existence of certain facts, and they are ordinarily classified as judicial and extrajudicial."

Therein we went on to say that: "A judicial admission is a formal act done in the course of judicial proceedings which is a substitute for evidence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by the opponent is true." Kipf v. Bitner, *supra.*

"A judicial admission is ordinarily final and conclusive upon the party by whom it was made, unless the trial court, in the exercise of a judicial discretion, timely relieves him from that consequence." Kipf v. Bitner, *supra.* See, also, Johns v. Carr, 167 Neb. 545, 93 N. W. 2d 831; Kuhlmann v. Platte Valley Irr. Dist., 166 Neb. 493, 89 N. W. 2d 768. We have applied this principle to admissions contained in the pleadings of the parties upon which the case was actually tried. See, Johns v. Carr, *supra;* Wright v. Lincoln City Lines, Inc., 160 Neb. 714, 71 N. W. 2d 182; Barkalow Bros. Co.

v. English, 159 Neb. 407, 67 N. W. 2d 336. Also we have applied this principle where a party or his counsel has, either in the opening statement or during the course of trial, conceded or stipulated to a fact or facts. See, Kuhlmann v. Platte Valley Irr. Dist., *supra;* LeBarron v. City of Harvard, 129 Neb. 460, 262 N. W. 26, 100 A. L. R. 767. And, under certain conditions, we have applied it to the evidence of a party to the action. See Southwestern Truck Sales & Rental Co. v. Johnson, 165 Neb. 407, 85 N. W. 2d 705.

However, in Burhoop v. Brackhan, *supra,* we said: "We think the correct rule is stated in 169 A. L. R. under the annotation of 'Binding effect of party's own unfavorable testimony' under IV b, at page 805, as follows: '* * * where the more favorable evidence relied on by a party to overcome the effect of his own self-injurious statement is in his own testimony, no distinction is drawn as compared with the situation where the curative evidence is from other witnesses. It is still for the trier of fact to decide the issue upon all the evidence.'" And, in Rueger v. Hawks, 150 Neb. 834, 36 N. W. 2d 236, we said: "Under the older practice and prevailing rule, a party is entitled to the benefit of the testimony of other witnesses in contradiction of his own, wherever his own is not of the character of a judicial admission, and concerns only some evidential or constituent circumstance of his case. This is especially so as to the circumstances of an accident or similar event, because in such a case the party's testimony is especially subject to inexactness of observation and memory." In view of the entire record we think these two statements here controlling on this issue.

As we said in Kipf v. Bitner, *supra:* "An extrajudicial admission is simply an item of evidence in the mass of evidence adduced during a trial, admissible in contradiction and impeachment of the present claim and other evidence of the party making the admission. * * * An extrajudicial admission is not ordinarily final and

conclusive upon the party by whom it was made, in the absence of controlling elements of estoppel." See, also, Angstadt v. Coleman, *supra.*

Before discussing the facts in more detail we set forth the following principles here applicable to the driver of the car in which plaintiff was riding.

"A driver of a motor vehicle about to enter a highway protected by stop signs must stop as directed, look in both directions, and permit all vehicles to pass which are at such a distance and traveling at such a speed that it would be imprudent to proceed into the intersection. * * * Where a motorist on a nonfavored street stops at an intersecting arterial highway when the intersection is clear of traffic, looks to the right and left for approaching vehicles, acting as a reasonably prudent person in the exercise of due care would act in the belief that he has time and opportunity to safely cross, he is not liable for negligence merely because he attempts to do so. * * * Upon properly complying with the foregoing duties the driver, upon entering the intersection, does not have an absolute right-of-way which permits him to proceed without looking but must continue to maintain a proper lookout for the safety of himself and others traveling upon the streets." Paddack v. Patrick, *supra.*

Under the principles announced by this court in Burhoop v. Brackhan, *supra,* and Styskal v. Brickey, *supra,* and the facts disclosed by the record, plaintiff could not be guilty of contributory negligence, and that issue was properly not submitted to the jury. However, as we said in Bergendahl v. Rabeler, 133 Neb. 699, 276 N. W. 673: "Although the negligence of the driver of an automobile will not ordinarily be imputed to a passenger therein when the passenger has no control over the car or driver, the passenger may not recover from a third person for injuries suffered in a collision when the negligence of the driver is the sole proximate cause of the accident." See, also, Burhoop v. Brackhan, *supra.*

This latter issue was raised by defendant's answer and properly submitted by the court's instruction No. 11.

We shall consider the record on the basis of the principle applicable when a motion is made for a directed verdict or when a verdict has been rendered for the party against whom the motion for judgment notwithstanding the verdict is made.

From the evidence adduced a jury could find that Keefover, with his wife and plaintiff in the front seat, was driving his Plymouth automobile north on Twenty-sixth Street; that when he came to where it intersects with R Street he stopped his car at the stop sign located on Twenty-sixth Street at the southeast corner of that intersection; that he then looked both west and east down R Street, his view being unobstructed, and saw no vehicles approaching from either direction; that he then started his automobile and proceeded to drive into the intersection; that after starting up his automobile Keefover did not again look to the east until after both plaintiff and his wife made an outcry, which happened after the Plymouth had fully entered the intersection, being north of the south curb line of R Street; that when this outcry was made Keefover immediately applied his brakes and almost came to a stop, skidding his tires a distance of approximately 13 feet 8 inches in doing so; that upon applying his brakes Keefover looked to the east and saw a Hudson automobile approaching the intersection from that direction, it then being some three-car lengths east thereof; that the front of Keefover's car was then just across the center of R Street; that Keefover thereupon released his brakes, let out his clutch, and stepped on the gas; and that he traveled about one-car length thereafter, his car being hit when its rear end was about 3 feet north of the center line of R Street.

The jury could also have found that as defendant turned west onto R Street from Twenty-seventh Street, where he had been stopped by a traffic signal, he picked

up speed; that his speed picked up to where he was going 25 to 30 miles an hour; that his view to the west was unobstructed, there being no other traffic on R Street at that time between Twenty-fifth and Twenty-seventh Streets; that he was between 50 and 100 feet from the Plymouth when he saw it out in the intersection; that the Plymouth seemed to stop and then start up again; that he immediately applied his brakes, leaving skid marks for a maximum distance of 24 feet, 6 inches; that he held to his side of the center of R Street, striking the Plymouth at a point about 6 feet north of the center thereof; and that after the impact his car came to almost an immediate stop.

It is true that defendant testified he first saw the Plymouth when its rear end was only about 3 feet south of the center of R Street; that he told the police officer investigating the accident that he was only 10 feet from the Plymouth when he first saw it; that he immediately applied his brakes; and that he was going 24 to 25 miles an hour at the time of the impact. The jury was not obligated to believe this testimony and could very well have come to the conclusion that defendant was mistaken when he made such admissions and so testified. That is particularly true when the following physical facts are considered: First, the reaction time it takes a driver to apply his brakes after seeing an object in his path; second, the length of the skid marks left by the tires up to the point of impact; and third, the fact that the Hudson came to almost an immediate stop after the impact.

"Negligence is the doing of something which an ordinarily prudent person would not have done under the same or similar circumstances, or the failure to do something which an ordinarily prudent person would have done under the same or similar circumstances. * * * Proximate cause, as used in the law of negligence, is that cause which in a natural and continuous sequence, unbroken by an efficient intervening cause, produces

the injury, and without which the injury would not have occurred." Shupe v. County of Antelope, 157 Neb. 374, 59 N. W. 2d 710.

Under the factual situation here disclosed a jury could properly find that Keefover was negligent in the manner in which he operated his automobile when he drove it into the intersection and that such negligence was the proximate cause of the accident and, in view of its verdict, apparently did so. In this respect we have not overlooked the fact that defendant testified that when he first saw the Plymouth automobile he probably could have turned to the left and have avoided hitting it but did not do so because of the danger involved to any oncoming traffic from the west. Plaintiff contends the record shows there was no traffic on R Street between Twenty-fifth and Twenty-seventh Streets at the time. It is true that defendant testified he observed no traffic ahead of him going west on R Street as far as Twenty-fifth Street and he didn't notice any coming east. However, whether or not any traffic had come from the west on R Street from beyond Twenty-fifth Street while defendant was driving west thereon between Twenty-seventh Street and the point of the accident is not established. Whether or not, under these circumstances, defendant was negligent in this regard we think was properly a jury question.

In view of what we have said we think the issue of negligence and proximate cause, insofar as the defendant was concerned, was a question for the jury. Since no question is raised as to the manner of its submission, we affirm the judgment of the trial court overruling plaintiff's motion.

AFFIRMED.