783 N.W.2d 240 (2010)
18 Neb. App. 430
STATE of Nebraska, appellee,
v.
Joseph E. TAMAYO, appellant.
No. A-09-223.
Court of Appeals of Nebraska.
June 1, 2010.
*242 James J. Regan, Omaha, for appellant.
Jon Bruning, Attorney General, and Nathan A. Liss for appellee.
INBODY, Chief Judge, and SIEVERS and CASSEL, Judges.
SIEVERS, Judge.
Joseph E. Tamayo filed a motion for rehearing following the release of our memorandum opinion in this case, in which we found that the trial court did not err in denying Tamayo's motion to discharge on statutory speedy trial grounds. See State v. Tamayo, No. A-09-223, 2009 WL 3654503 (Neb.App. Nov. 3, 2009) (selected for posting to court Web site). We granted the motion for rehearing, and our previous opinion is hereby withdrawn. We now reconsider whether the district court erred in its application of Neb.Rev.Stat. § 29-1207(4)(a) (Reissue 2008) by excluding from the running of the speedy trial clock the period of April 8 to October 20, 2008, as a "proceeding" concerning Tamayo's competency to stand trial. Upon reconsideration, we conclude that our opinion was incorrect with regard to this issue, and we reverse the order of the district court denying Tamayo's motion to discharge on speedy trial grounds.

*243 BACKGROUND
On January 18, 2008, the State filed an information charging Tamayo with first degree murder and use of a deadly weapon to commit a felony. Because Tamayo was indigent, the court appointed counsel to represent him. On February 6, Tamayo filed a plea in abatement. On March 28, the district court entered an order dismissing the plea in abatement. On April 7, Tamayo filed a "Motion for Psychiatric Expert." The record in the instant case does not contain a transcription of any hearing that may have been held with regard to that motion. The court's subsequent order entered on April 11 granted Tamayo's motion to engage the services of a psychiatrist for two specific purposes.
On October 15, 2008, the district court conducted a hearing regarding the findings contained in the psychiatrist's evaluation. The psychiatrist's report admitted into evidence was entitled "Competence Evaluation of Joseph Tamayo." In the section of the report entitled "Reason for This Evaluation," the report stated that Tamayo "was seen in order to provide an independent psychiatric evaluation to determine his sanity at the time of the alleged crime and competence to stand trial and to give statements to the police." The report recounted a portion of the evaluation in which the psychiatrist asked Tamayo about his understanding of the legal system, including the trial process. At the conclusion of the report, it stated the psychiatrist's opinion that Tamayo "is marginally competent to stand trial." The report also included a letter from the psychiatrist to Tamayo's counsel dated September 24, 2008, in which the psychiatrist noted that Tamayo's counsel had telephoned him on September 22, "requesting an additional report addressing ... Tamayo's competence to stand trial." In this letter, the psychiatrist stated that he was charging an additional $180 for his services rendered for this "additional" report. However, we note that there was only one report in the record from the psychiatrist. This report included a section on Tamayo's understanding of the law and the charges against him. On October 20, the district court entered an order in which the court found that Tamayo was competent to stand trial.
On October 27, 2008, Tamayo filed a motion to suppress certain evidence. In an order dated December 23, 2008, the court denied this motion.
On January 30, 2009, Tamayo filed a motion to discharge under § 29-1207, in which motion he alleged that he had "not been brought to trial within the time required by law" and that "more than six months have passed since the filing of the Information ... without [Tamayo's] having been brought to trial." At the hearing on Tamayo's motion to discharge, the transcription of the October 15, 2008, proceeding, the psychiatrist's report, the trial docket, and a copy of the complete court file were received into evidence.
On February 20, 2009, the court entered an order denying Tamayo's motion for discharge. The court found that in the absence of exclusions, the last day to bring Tamayo to trial would have been on July 18, 2008. The court found that a period of 50 days from February 7 to March 28, 2008, was excludable because the delay resulted from Tamayo's plea in abatement. The court also found that a period of 195 days from April 8 to October 20when the court entered an order finding that Tamayo was competent to stand trialwas excludable. This excludable period was based on the court's determination that the delay was for the purpose of a competency proceeding.
The court additionally found that there was an excludable period of 57 days as a *244 result of Tamayo's motion to suppress which he filed on October 27, 2008, and which was denied on December 23. The court concluded that there were 302 excludable days, which extended the time to bring Tamayo to trial to May 16, 2009. Tamayo timely appealed, and as said, we have granted rehearing and withdrawn our previous opinion and decision.

ASSIGNMENTS OF ERROR
Tamayo assigns, as restated, that the district court erred in (1) determining the amount of time that should be excluded in computing whether Tamayo had been brought to trial within the time period required by § 29-1207, (2) determining that Tamayo was not entitled to an absolute discharge from the offenses charged, and (3) interpreting how a mental competency proceeding governed by Neb.Rev. Stat. § 29-1823 (Reissue 2008) affects the determination of excludable time in a speedy trial calculation under § 29-1207(4)(a).

STANDARD OF REVIEW
As a general rule, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous. State v. Wells, 277 Neb. 476, 763 N.W.2d 380 (2009).
When issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. State v. Sellers, 279 Neb. 220, 777 N.W.2d 779 (2010).

ANALYSIS
Section 29-1207(1) of Nebraska's speedy trial statutes provides in part that "[e]very person indicted or informed against for any offense shall be brought to trial within six months, and such time shall be computed as provided in this section." To calculate the time for speedy trial purposes, a court must exclude the day the information was filed, count forward 6 months, back up 1 day, and then add any time excluded under § 29-1207(4) to determine the last day the defendant can be tried. State v. Williams, 277 Neb. 133, 761 N.W.2d 514 (2009). Under § 29-1207(1), the last day to bring Tamayo to trial was July 18, 2008, plus properly excluded time periods. The State has the burden of proving that one or more of the excluded periods of time under § 29-1207(4) are applicable if the defendant is not tried within 6 months of the commencement of the criminal action. See State v. Shipler, 17 Neb.App. 66, 758 N.W.2d 41 (2008).
Tamayo does not argue that the district court's determinations that the time for the plea in abatement and the motion to suppress were improperly excluded from the speedy trial calculations under § 29-1207(4)(a). Nor does Tamayo argue that the time between the April 7, 2008, motion and the April 11 order on his motion for a psychiatric evaluation was not properly excluded. Section 29-1207(4)(a) excludes the time for an examination and hearing on competency as well as the time period during which a criminal defendant is not competent to stand trial. However, Tamayo argues that the district court improperly excluded the time between the April 11 order and the October 15 competency hearing because Tamayo's competency to stand trial was not in question until the hearing on October 15 and, thus, such time was not a "proceeding" concerning the defendant's competency as contemplated by § 29-1207(4)(a) that would be excluded from the running of the speedy trial clock.
*245 Tamayo argues that the first time his competency to stand trial was called to the court's attention was when the written report from Dr. Bruce Gutnik was offered into evidence at the October 15, 2008, hearing. The State, on the other hand, argues that Tamayo's competency was in question beginning with the April 7 motion. Resolution of the excludable time under discussion begins by setting forth exactly what Tamayo's April 7 "Motion for Psychiatric Expert" requested. The motion stated:
[Tamayo] moves the Court for the authority to engage the services of a psychiatrist to evaluate [Tamayo] for the following purposes:
1. To determine [Tamayo's] mental capacity to waive his Miranda rights and/or to voluntarily provide a statement to law enforcement officers; and
2. To determine [Tamayo's] mental capacity as it relates to the defense of not responsible by reason of insanity under Nebraska law.
Significantly, the motion made no mention of competency to stand trial and did not include that issue as a purpose of the psychiatric examination. And, the trial court's order made no mention of the issue of competency to stand trial. The trial court's very precise and specific order was entered on April 11, 2008. The order granted Tamayo's motion and stated as follows:
This matter came before the Court on [Tamayo's] request to hire the services of a psychiatrist to evaluate his mental condition as it relates to his ability to provide a voluntary statement and to the possible defense of not responsible by reason of insanity....
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that [Tamayo] is authorized to engage the services of a psychiatrist for the above-stated purposes.
Thus, neither the motion nor the court's order makes any mention of "competency to stand trial." Our record does not include any transcription of what was said or done on April 10, 2008, concerning this motion, and neither party filed a request for such in the bill of exceptions. Thus, we do not know whether there was a hearing or, if so, whether it was on the record. We note that the order itself does not recite that a hearing was held or that evidence was receivedas is customary when such occurs. Therefore, it is sheer speculation to conclude that competency was at issue in April given the complete absence of any mention of the issue of competency in either the motion or the resulting order. Additionally, this is an appropriate place to note that even the trial court's order of October 20 determining that Tamayo was competent to stand trial contains the following recitation about its earlier order file stamped April 11:
On the 10th day of April ... at [Tamayo's] request this court ordered that [Tamayo] be allowed to engage the services of a psychiatrist for the purposes of evaluation of his medical condition relating to his ability to provide a voluntary statement and to the possible defense of not responsible by reason of insanity.
Again, the trial court indicates that the request for the hiring of the psychiatrist included two specific issuesneither of which was competence to stand trial. Therefore, it follows that the State has offered no evidence that competency to stand trial was raised, discussed, or in question at the April 10, 2008, hearing, nor was such within the parameters of the specific order entered by the court at that time. Accordingly, given the contents of the motion, the order ruling on the motion, *246 and the lack of proof from the State that competency to stand trial was at issue at the hearing on April 10, we conclude that a "proceeding" to examine and determine Tamayo's competence to stand trial was not begun on April 10. However, when the trial court denied the motion to discharge, it made the following finding of fact: "It is clear from the time of [Tamayo's] counsel['s] request for the appointment of a psychiatrist that such an appointment was for the purpose of determining [Tamayo's] competency to stand trial in addition to other related matters regarding statements he may have given to police."
With all due respect to the trial judge, this statement is simply and clearly wrong. The dissent suggests that we must be stricken with the "wrongness" of this finding "with the force of a five-week-old, unrefrigerated dead fish," quoting Parts and Elec. Motors, Inc. v. Sterling Elec., 866 F.2d 228, 233 (7th Cir.1988), before we can say that such finding is clearly wrong. While we do not adopt the "dead fish" test, we do respectfully suggest that if it really was clear as the trial judge says "from the time of [Tamayo's] counsel['s] motion" that competency was a purpose of the examination, even a reasonable fish peddler would naturally expect that either the motion to engage a psychiatrist or the order granting the motion would at least contain the word "competency," which neither does.
The dissent finds that the "competency proceeding" began either when the order was entered or, at the latest, on July 7, 2008, when the psychiatrist examined Tamayo. However, that conclusion ignores recent precedent defining a "proceeding" for speedy trial purposes. Under § 29-1207(4)(a), time is excluded from the speedy trial clock for "[t]he period of delay resulting from other proceedings concerning the defendant, including, but not limited to, an examination and hearing on competency...." In State v. Murphy, 255 Neb. 797, 587 N.W.2d 384 (1998), the court considered whether the excludable time on a defendant's motions to take depositions ended when the motion was ruled upon or when the depositions were completed. The court found that the excludable time ended with the ruling on the motion, reasoning as follows:
The State argues that even if the motion for depositions was "finally disposed" on February 5, 1997, the time consumed in taking depositions may still be excluded under § 29-1207(4)(a), since by its own language, that subsection is "not limited to" the periods specifically enumerated therein. However, § 29-1207(4)(a) refers only to "proceedings." Black's Law Dictionary 1204 (6th ed. 1990) states that a "proceeding" is "[i]n a more particular sense, any application to a court of justice, however made, for aid in the enforcement of rights, for relief, for redress of injuries, for damages, or for any remedial object." If the term "proceedings" was read broadly, rather than in its "particular sense," § 29-1207(4)(a) would include any delay at trial that "concerns" the defendant. If the Legislature had intended that the term "proceeding" encompass such a broad purview, there would have been little reason for the Legislature to have provided for exclusion under § 29-1207(4)(f), the "catchall provision." State v. Turner, 252 Neb. [620,] 629, 564 N.W.2d [231,] 237 [(1997) ]. Thus, the term "proceeding" must be read narrowly.
Clearly, a motion for depositions is an "application to a court of justice" and, thus, is a "proceeding," as the statute specifically provides. However, once that application has been granted, no further application to a court of justice is required to obtain the depositions.
*247 State v. Murphy, 255 Neb. at 803-04, 587 N.W.2d at 389.
For pretrial motions, the excluded time is from the filing of the motion under § 29-1207(4)(a) until its "final disposition." See State v. Covey, 267 Neb. 210, 673 N.W.2d 208 (2004). Given the language of the motion for the engagement of a psychiatrist and the language of the April 11, 2008, order granting the motion, the motion was finally disposed of on April 11 by the order of that date. Thus, in the present case, once the trial court granted Tamayo's motion to engage a psychiatrist for the two purposes outlined in the motionneither of which dealt with competency to stand trialthe "proceeding" to engage a psychiatrist was over, and there was nothing further pending before the court regarding such motion. The "proceeding" that tolled the speedy trial clock was over when the order of April 11 was entered.
The only evidence before us is that Tamayo's counsel was requesting a psychiatric evaluation for two specific purposes: the insanity defense and the voluntariness of the statement he gave to police, completely different issues than Tamayo's competence to stand trial. Our Supreme Court has explained:
The question of whether the appellant is now competent to stand trial is separate and distinct from the question of whether the appellant may be responsible for the commission of the crime. The test to determine whether an accused is competent to stand trial is not the same test applied to determine whether the accused may be not guilty by reason of insanity. The test of mental competency to stand trial is whether the defendant now has the capacity to understand the nature and object of the proceedings against him, to comprehend his own condition in reference to such proceedings, and to make a rational defense. See, State v. Crenshaw, 189 Neb. 780, 205 N.W.2d 517 (1973); Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); State v. Klatt, 187 Neb. 274, 188 N.W.2d 821 (1971).
State v. Guatney, 207 Neb. 501, 509, 299 N.W.2d 538, 543-44 (1980).
Tamayo's mental state raised in the motion, and addressed in the order, is solely his mental state at the time of the crime and the resulting police interrogation for purposes of a possible insanity defense and the exclusion of his statement. In short, the motion sought trial evidence to exonerate Tamayonot to avoid a trial by virtue of incompetency. That said, it is nonetheless clear that Tamayo's competency to stand trial did become an issue at some juncture, and for purposes of our speedy trial analysis, we must determine when a "proceeding" to determine competency, in the language of § 29-1207(4)(a), began, which in turn determines how many days are excluded due to such proceeding.
We begin this phase of our analysis with § 29-1823, which states in part:
If at any time prior to trial it appears that the accused has become mentally incompetent to stand trial, such disability may be called to the attention of the district court by the county attorney, by the accused, or by any person for the accused. The judge of the district court of the county where the accused is to be tried shall have the authority to determine whether or not the accused is competent to stand trial.
Our record does not illuminate precisely when Tamayo's competency was called to the attention of the district court. At no time was there a separate motion for a competency evaluation, nor was competency mentioned in any court proceeding or *248 pleading prior to the October 15, 2008, hearing. If a judge becomes aware of facts which raise doubts as to the defendant's competency to stand trial, the question should be settled. State v. Johnson, 4 Neb.App. 776, 551 N.W.2d 742 (1996), and § 29-1823(1) impose similar duties. But, there is nothing in the record that shows that the trial judge had any information suggesting incompetency to stand trial when he sustained the motion for the engagement of a psychiatrist to evaluate Tamayo for the purposes specified in the motion and orderor at any time before the hearing of October 15.
The only evidence contained in the record that demonstrates when competency became an issue is the letter dated September 24, 2008, from Dr. Gutnik, who evaluated Tamayo in July 2008, to Tamayo's counsel. Dr. Gutnik's letter to defense counsel is attached to Dr. Gutnik's report dated September 24, 2008. The letter begins, "Thank you for your telephone call of September 22, 2008, requesting an additional report addressing ... Tamayo's competence to stand trial. I have reviewed my material and prepared the report, which is enclosed." This letter is dated the same date as the competency report that went into evidence at the October 15 hearing, which concluded that Tamayo was competent to stand trial. Such letter shows that on September 22, Tamayo's counsel requested that Dr. Gutnik include a competency evaluation in his reportand the State introduced no evidence to dispute this evidence that competency to stand trial was not at issue until September 22. This letter also allows the inference that while competency to stand trial was not a part of the original evaluation conducted nearly 3 months prior, Dr. Gutnik was able to address that issue based upon his earlier examination of, and interactions with, Tamayo in July. Of course, the mere fact that the psychiatrist was able to render an opinion on competency to stand trial in late September based on his earlier July examination does not mean that a "competency proceeding" that tolls the speedy trial clock was ongoing since the date of the examination. The examination is a medical process, whereas a competency proceeding is a legal process, and State v. Murphy, 255 Neb. 797, 587 N.W.2d 384 (1998), teaches us how one defines a "proceeding" for speedy trial purposesand it is not when the psychiatrist conducts a mental status examination.
We observe that the comments of the trial court and counsel on October 15, 2008, do not tell us whether the trial court was informed before October 15 that defense counsel wanted the psychiatrist's report to address whether Tamayo was competent to stand trial. We quote the pertinent exchange between the court and counsel:
THE COURT: And upon application by [Tamayo] this Court entered an order regarding the allowance of a psychiatrist, by [Tamayo], to determine possible defenses in this case. And I think that perhaps that order's been expanded upon.
....
[Prosecuting attorney]: Judge, I believe that in prior discussions it was somewhat regarding insanity but also kind of a general mental state of [Tamayo]. And in that regard the issue of competency was raised and was addressed by this doctor who was chosen ascourt appointed by the defense in this case and gave an opinion with regard to competency. So I think that's what we're here for today.
....
[Defense counsel:] I would just add, just agree or indicate that as part of the evaluation done, pursuant to my request *249 and the Court's order, ... Tamayo was examined for competence to assist me in his defense and to stand trial.
This exchange clearly sets out that the original order for a psychiatric evaluation was intended to address possible defenses, not competency, and the court's opening remark indicates some degree of awareness that at some unspecified point in time, the scope of the psychiatrist's report had been expandedand a permissible inference is that it had been "expanded" to include the issue of competency to stand trial. The district court cited the last statement quoted above from Tamayo's counsel in its order overruling the motion to discharge, and the dissent says that defense counsel's statement is a determinative "judicial admission" made at the October 15, 2008, hearing by defense counsel that a competency proceeding was ongoing. Thus, according to the dissent, "the competency proceeding was in existence no later than July 7." We respectfully submit that there are several problems with this conclusion. First, July 7 is the date of a medical procedure, not a legal proceeding that tolls the speedy trial clock. Second, the argument fails to distinguish between a judicial admission and a "simple admission." We discussed this difference in Nichols Media Consultants v. Ken Morehead Inv. Co., 1 Neb.App. 220, 224-25, 491 N.W.2d 368, 372 (1992):
The difference between judicial admissions and simple admissions was explained in Kipf v. Bitner, 150 Neb. 155, 33 N.W.2d 518 (1948). The court, in that case, stated: "`The law of Evidence has suffered, in its most vital parts, from an ailment almost incurable ... that of confusion of nomenclature. The term "admissions" exhibits this misfortune in one of its notable aspects. There are two principles, not at all connected, which for a century or more have had to be discussed by the aid of a single and common term. One ... authorizes the receipt of any statement made by an opponent, as evidence in contradiction and impeachment of his present claim. (The form of which, if admissible, is immaterial. It may be oral or written or it may be a sworn statement, as for example a deposition....) Such statements... should better ... be designated Quasi-Admissions. The true Admission, in the fullest sense of the term, is another thing, and involves a totally distinct principle. It concerns a method of escaping from the necessity of offering any evidence at all. The former (quasi admissions) is an item in the mass of evidence; the latter (judicial admissions) is a waiver relieving the opposing party from the need of any evidence.'" (Citation omitted.) (Emphasis omitted.) Id. at 164-65, 33 N.W.2d at 523-24, quoting 4 John H. Wigmore, Evidence in Trials at Common Law § 1058 (James H. Chadbourn rev. 1972).
Therefore, at best, defense counsel's statement could only be merely a simple admission to be considered with the other evidence, including the evidence that competency became an issue on September 22, 2008, because there was absolutely nothing else said or done in the hearing on October 15 to show that the State was offering (or relying upon) defense counsel's statement as relieving its burden to show when the "competency proceeding" began and ended. Further, defense counsel's statement is not as unequivocal as the dissent asserts. It can also be read to say that he had the psychiatrist perform the evaluation authorized in the court's order, but later asked that the psychiatrist opine on competencywhich is exactly what all of the other available evidence proves.
Granted, the statement by Tamayo's counsel on October 15, 2008, clearly indicates *250 that the completed evaluation report included a competency evaluation. This statement by counsel, however, does not concede or prove that such inclusion of a competency evaluation occurred at the time of the original motion and court order. Rather, given the contents of Dr. Gutnik's letter to Tamayo's counsel, what is clear is that competency to stand trial was not the subject of a "proceeding" until, at the earliest, September 22, when defense counsel asked that Dr. Gutnik address that issue in his report. Using September 22 as the start date of a competency "proceeding" admittedly gives the concept of a "proceeding" a broad reading and one that we concede runs counter to State v. Murphy, 255 Neb. 797, 587 N.W.2d 384 (1998), which requires a "narrow" construction of what constitutes a "proceeding," remembering that there is no evidence that the trial court was involved in the issue of competency until the hearing of October 15. In summary, while the issue of competency may have been brought to the court's attention before October 15, there is no evidence of how such may have occurred or when. And that, fundamentally, is a failure by the State to carry its burden to prove excludable time periods. In any event, giving the State the benefit of the most favorable view of the evidence, September 22 is the absolute earliest date that can be used under the evidence for the start of a "competency proceeding" when defense counsel asked the psychiatrist to include his opinion on competency in his report.
We acknowledge that one older case says that the time period "attributable to psychiatric evaluations and treatment" is properly excludable under § 29-1207(4). See State v. Bolton, 210 Neb. 694, 316 N.W.2d 619 (1982). However, Bolton is factually distinguishable from the instant case, and in any event, it was decided before State v. Murphy, supra, when the Supreme Court narrowed and refined the definition of a "proceeding" that tolls the speedy trial clock. Thus, we conclude that State v. Murphy, supra, compels the result we reach.
In Bolton, the Supreme Court counted days as excluded from the speedy trial count beginning with the date of the defendant's commitment by the Douglas County Board of Mental Health on March 14, 1980, until the district court's finding of February 4, 1981, that he was then competent to stand trial. The Supreme Court referenced this timeframe and said such was "attributable to psychiatric evaluations and treatment, [and therefore was] properly excludable as an `other proceeding' under the provisions of § 29-1207(4)(a)." State v. Bolton, 210 Neb. at 699, 316 N.W.2d at 622. No other case we have found uses this expansive notion that merely because a defendant is undergoing psychiatric evaluation or treatment, the speedy trial clock is tolled. We respectfully suggest that under the State v. Murphy, supra, definition of "proceeding," there would not be tolling of the speedy trial clock merely because a criminal defendant is undergoing psychiatric treatment or evaluations. Rather, under current precedent, State v. Murphy, supra, it is a "proceeding" to determine competency to stand trial that tolls the speedy trial clock.
Another older case that is of some interest, although speedy trial issues were not assigned as error, is State v. Teater, 217 Neb. 723, 351 N.W.2d 60 (1984). On August 26, 1982, the district court ruled that the defendant was incompetent to stand trial, and he was committed to the Lincoln Regional Center under the district court's power found in § 29-1823 (Reissue 1979) for further evaluation. Six months later, and after extensive evaluation by psychiatrists and psychologists, the district court *251 determined that the defendant was mentally competent to stand trial. In the context of the defendant's claim that he was not timely arraigned, the Supreme Court simply said:
Any delays in the instant case were the result of the proceedings to determine [the defendant's] competency to stand trial and the continuance granted at the request of [the defendant's] counsel. Both of these factors tolled the defendant's right to a speedy trial. See Neb.Rev.Stat. § 29-1207(4)(a) and (b) (Reissue 1979).
State v. Teater, 217 Neb. at 726, 351 N.W.2d at 63.
However, in contrast to State v. Bolton, supra, and the instant case, in State v. Teater, supra, the criminal defendant had been determined to be incompetent by the court to stand trial, thereby excluding the time during which he was incompetent under § 29-1207(4)(a). Clearly, the district court did not order a psychiatric evaluation for the purposes of determining competency in its April 11, 2008, order, and unlike in Bolton, there is no evidence that Tamayo's mental health required ongoing treatment after his arrest or that he was committed to a mental health facility. Therefore, we find that the time between April 7 and September 22 was not excludable as a time period "attributable to psychiatric evaluations and treatment" as was the case in Bolton and Teater.
In conclusion, we find the district court clearly erred in its factual finding that a "competency proceeding" occurred from April 8 until October 20, 2008, and that such time was excludable in the speedy trial calculation under § 29-1207(4)(a). However, the district court properly determined that 3 days, from April 8 to 11, were excludable as the "proceeding" pertaining to the pretrial motion for a psychiatric evaluation. If we calculate the excludable days using September 22 as the inception date for the competency proceeding, there is a total of 28 excludable days. Adding these 28 days to the 51 days for the plea in abatement, the 57 days for the motion to suppress, and the 3 days for the motion for a psychiatric evaluation, there is a total of 139 excludable days. The last day to bring Tamayo to trial under § 29-1207(1) was July 18. Adding 139 excludable days to that date, the last day to bring Tamayo to trial was December 5. Tamayo filed his motion to discharge on January 30, 2009, and he had not yet been brought to trial. Neb.Rev.Stat. § 29-1208 (Reissue 2008) states that if a defendant is not brought to trial before the running of the time for trial, as extended by excluded periods, he shall be entitled to his absolute discharge from the offense charged and for any other offense required by law to be joined with that offense. As such, Tamayo is entitled to discharge for the offenses charged in the information filed January 18, 2008.

CONCLUSION
Because we find that the district court erroneously concluded that there were 195 excludable days for the competency proceeding when there were, at most, 3 days for the pretrial psychiatric evaluation motion and 28 days for the competency proceeding, we reverse the February 20, 2009, order denying Tamayo's motion to discharge and hereby remand the matter to the district court with directions to absolutely discharge Tamayo from the charges pending in this case.
REVERSED AND REMANDED WITH DIRECTIONS.
CASSEL, Judge, dissenting.
In the instant appeal, this court is called upon to determine whether the district court clearly erred in determining that the time had not expired for the State to bring Joseph E. Tamayo to trial. See Neb.Rev. *252 Stat. § 29-1207 (Reissue 2008). The majority opinion finds clear error. I respectfully disagree.
I have no quarrel with the portion of the majority's analysis which distinguishes a motion for a pretrial psychological evaluation from a competency proceeding for speedy trial purposes. However, I respectfully disagree with the majority's conclusion that the district court clearly erred in determining when the competency proceeding began. This is because in light of the record, I believe the applicable standard of review requires a different conclusion.
The appellate standard of review imposes a high burden on Tamayo. As a general rule, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous. State v. Wells, 277 Neb. 476, 763 N.W.2d 380 (2009). "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must, as one member of this court recently stated during oral argument, strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." Parts and Elec. Motors, Inc. v. Sterling Elec., 866 F.2d 228, 233 (7th Cir.1988). In making the determination as to factual questions, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. State v. Vela, 279 Neb. 94, 777 N.W.2d 266 (2010). When testing the trial judge's findings of fact, an appellate court considers the evidence in the light most favorable to the successful party and gives the successful party the benefit of every inference reasonably deducible from the evidence. Risor v. Nebraska Boiler, 277 Neb. 679, 765 N.W.2d 170 (2009).
The district court relied upon the admission of Tamayo's counsel, who stated at the time of the October 15, 2008, hearing, "I would just add, just agree or indicate that as part of the evaluation done, pursuant to my request and the Court's order,... Tamayo was examined for competence to assist me in his defense and to stand trial." (Emphasis supplied.) Thus, the examination was conducted for two purposes, one of which was for competence to stand trial.
This statement constitutes a judicial admission, which is binding on Tamayo in this appeal. A judicial admission, as a formal act done in the course of judicial proceedings, is a substitute for evidence and thereby waives and dispenses with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by an opponent is true. State v. Canady, 263 Neb. 552, 641 N.W.2d 43 (2002). Pursuant to Neb.Rev.Stat. § 7-107 (Reissue 2007):
An attorney or counselor has power... (2) to bind his client by his agreement in respect to any proceeding within the scope of his proper duties and powers; but no evidence of any such agreement is receivable except the statement of the attorney himself, his written agreement signed and filed with the clerk, or an entry thereof upon the records of the court ....
Further, statements made by a party or his attorney during the course of a trial may be judicial admissions. Schroeder v. Barnes, 5 Neb.App. 811, 565 N.W.2d 749 (1997). See, also, Vermaas v. Heckel, 170 Neb. 321, 102 N.W.2d 647 (1960) (party or party's counsel can make judicial admission in course of trial). In the instant case, Tamayo's counsel actually made a judicial admission because in the course of a proceeding, he agreed that a competency *253 examination had occurred pursuant to a court order.
Only one date of examination appears in our record. Dr. Bruce Gutnik evaluated Tamayo on July 7, 2008. Tamayo's counsel judicially admitted that the examination was conducted, in part, to determine competence to stand trial. In addition, Dr. Gutnik's report states, "Tamayo was seen in order to provide an independent psychiatric evaluation to determine his sanity at the time of the alleged crime and competence to stand trial ...." (Emphasis supplied.)
At a minimum, considering the evidence most favorably to the State as the successful party and giving the State the benefit of every inference reasonably deducible from the evidence, the competency proceeding was in existence no later than July 7, 2008. I reach this conclusion because Tamayo's counsel admitted that the evaluation was completed pursuant to counsel's request and a court order, and logically both would have had to occur prior to the evaluation. Assuming that all of the majority's other calculations are correct, the additional 77 days from July 7 to September 22 would extend the majority's last day to bring Tamayo to trial, i.e., December 5, 2008, to February 20, 2009. As Tamayo's motion for discharge was filed January 30, 2009, the time to commence trial had not yet expired.
Moreover, under our standard of review, the judicial admission can be read to support the trial court's finding tracing the commencement of competency proceedings to the date when Tamayo filed his motion for the appointment of a psychiatrist. One can read the admission as agreeing that the evaluation was "done, pursuant to ... the Court's order." The only possible order in the record to which this could refer is the order of April 11, 2008. In order to reject the district court's finding, the majority relies upon its reading of the April 7 motion, the April 11 order, and the contents of Dr. Gutnik's letter to Tamayo's counsel. But the question before us is not how this court would have determined the factual questions in the first instance; rather, the question is whether the district court's finding was clearly wrong. And in answering this question, this court must view the evidence most favorably to the State and give it the benefit of every reasonable inference in its favor. I respectfully submit that under the requisite standard, the judicial admission can be read to support the district court's conclusion.
If I were considering the evidence as a fact finder, I might well reach the same conclusion as the majority. But after long and careful reflection, I believe that the standard of review requires me to conclude otherwise. I would affirm the decision of the district court denying Tamayo's motion for absolute discharge.